1  William H. Brownstein - State Bar No. 84507
   William H. Brownstein & Associates,
2     Professional Corporation
   1250 Sixth Street
3  Suite 205
   Santa Monica, California 90401-1637
4  Telephone: (310) 458-0048
   FAX: (310) 576-3581
5  Email: Brownsteinlaw.bill@gmail.com
   Attorneys for Debtor and Debtor in Possession

6

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10                   **LOS ANGELES DIVISION**

| In re | Bk. No. 2-09-bk-17971 PC |
|---|---|
| JOY INVESTMENT GROUP, LLC, | In a Case Under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.) |
| Debtor | **SECOND AMENDED DISCLOSURE STATEMENT AS MODIFIED DESCRIBING MODIFIED SECOND AMENDED CHAPTER 11 PLAN** |
| | **Second Amended Disclosure Statement Hearing** |
| | Date:   December 15, 2010<br>Time:   9:30 a.m.<br>Ctrm:   1539<br>        255 East Temple Avenue<br>        Los Angeles, California 90012 |
| | **Plan Confirmation Hearing**<br>Complete This Section When Applicable<br>Date:   February 16, 2011<br>Time:   9:30 a.m.<br>Ctrm:   1539<br>        255 East Temple Avenue<br>        Los Angeles, California 90012 |

1

## TABLE OF CONTENTS

2

3    I.    **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -
        A.    Purpose of This Document. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 1 -
        B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing. . . . . . . . . - 2 -
4            1.    Time and Place of the Confirmation Hearing. . . . . . . . . . . . . . . . . . . . . - 2 -
            2.    Deadline For Voting For or Against the Plan. . . . . . . . . . . . . . . . . . - 2 -
5            3.    Deadline For Objecting to the Confirmation of the Plan. . . . . . . . . . . . . . - 3 -
        C.    Disclaimer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -
6
    II.   **BACKGROUND**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 3 -
7        A.    Description and History of the Debtor's Business. . . . . . . . . . . . . . . . . . . . . - 3 -
        B.    Principals/Affiliates of Debtor's Business . . . . . . . . . . . . . . . . . . . . . . . . - 4 -
8        C.    Management of the Debtor Before and After the Bankruptcy. . . . . . . . . . . . . . . - 4 -
        D.    Events Leading to Chapter 11 Filing. . . . . . . . . . . . . . . . . . . . . . . . . . . . - 4 -
9        E.    Significant Events During the Bankruptcy. . . . . . . . . . . . . . . . . . . . . . . . - 6 -
            1.    Bankruptcy Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 6 -
10            2.    Other Legal Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 13 -
            3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers or
11                Mechanic's Lien creditors.
                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 14 -
12                i.    Preferential and Equitably Subordinated Transfers. . . . . . . . . . . . . - 14 -
                ii.   Mechanics Lien Holders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 15 -
13            4.    Procedures Implemented to Resolve Financial Problems. . . . . . . . . . . . . . . - 16 -
            5.    Current and Historical Financial Conditions. . . . . . . . . . . . . . . . . . . . . - 16 -
14
    III.  SUMMARY OF THE PLAN OF REORGANIZATION. . . . . . . . . . . . . . . . . . . . . . . - 17 -
15        A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan. . . . . - 17 -
        B.    Unclassified Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 17 -
16            1.    Administrative Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 18 -
            2.    Priority Tax Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 19 -
17            3.    Classified Claims and Interests. . . . . . . . . . . . . . . . . . . . . . . . . . . - 19 -
            a..   Classes of Secured Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 19 -
18            b.    Classes of Priority Unsecured Claims. . . . . . . . . . . . . . . . . . . . . . . . - 22 -
            c.    Class of General Unsecured Claims. . . . . . . . . . . . . . . . . . . . . . . . . . - 22 -
19            d.    Class(es) of Interest Holders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 23 -
        C.    Means of Effectuating the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -
20            1.    Funding for the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -
            2.    Post-confirmation Management. . . . . . . . . . . . . . . . . . . . . . . . . . . . - 24 -
21            3.    Disbursing Agent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -
        D.    Risk Factors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 25 -
22        E.    Other Provisions of the Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 26 -
            1.    Executory Contracts and Unexpired Leases. . . . . . . . . . . . . . . . . . . . . - 26 -
23                a.    Assumptions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 26 -
                b.    Rejections. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 26 -
24                c.    Abandonments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 27 -
            2.    Changes in Rates Subject to Regulatory Commission Approval. . . . . . . . . . - 27 -
25            3.    Retention of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 27 -
        F.    Tax Consequences of Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 27 -
26
    IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES. . . . . . . . . . . . . . . . . . - 28 -
27        A.    Who May Vote or Object. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 28 -
            1.    Who May Object to Confirmation of the Plan. . . . . . . . . . . . . . . . . . . . - 28 -
28            2.    Who May Vote to Accept/Reject the Plan. . . . . . . . . . . . . . . . . . . . . . - 28 -

| | | | | |
|---|---|---|---|---|
| | | a. | What Is an Allowed Claim/Interest. | - 28 - |
| | | b. | What Is an Impaired Claim/Interest. | - 29 - |
| | 3. | | Who is Not Entitled to Vote. | - 29 - |
| | 4. | | Who Can Vote in More Than One Class. | - 30 - |
| | 5. | | Votes Necessary to Confirm the Plan. | - 30 - |
| | 6. | | Votes Necessary for a Class to Accept the Plan. | - 30 - |
| | 7. | | Treatment of Nonaccepting Classes. | - 30 - |
| | 8. | | Request for Confirmation Despite Nonacceptance by Impaired Class(es). | - 30 - |
| B. | | | Liquidation Analysis. | - 31 - |
| C. | | | Feasibility. | - 34 - |

V. EFFECT OF CONFIRMATION OF PLAN. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -
  A.   Discharge. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -
  B.   Revesting of Property in the Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -
  C.   Modification of Plan. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -
  D.   Post-Confirmation Status Report. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -
  E.   Quarterly Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 36 -
  F.   Post-Confirmation Conversion/Dismissal. . . . . . . . . . . . . . . . . . . . . . . . - 36 -
  G.   Final Decree. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 37 -

VI.   SUPPORTING DECLARATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 38 -

EXHIBIT A - LIST OF ALL ASSETS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 39 -

EXHIBIT B - FINANCIAL STATEMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 172 -

EXHIBIT C - UNEXPIRED LEASES TO BE ASSUMED. . . . . . . . . . . . . . . . . . . - 179 -

EXHIBIT D - EXECUTORY CONTRACTS TO BE ASSUMED. . . . . . . . . . . . . . . - 180 -

EXHIBIT E - LIQUIDATION ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . - 181 -

EXHIBIT F - LIST OF ADMINISTRATIVE EXPENSE CLAIMS. . . . . . . . . . . . . - 182 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 183 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 184 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 185 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 186 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 187 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 188 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 189 -

EXHIBIT G - LIST OF PRIORITY UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 190 -

EXHIBIT H - LIST OF GENERAL UNSECURED CLAIMS. . . . . . . . . . . . . . . . . - 191 -

EXHIBIT I - LIST OF EQUITY INTERESTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . - 195 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**I.**

**INTRODUCTION**

Joy Investment Group, LLC, a California limited liability company (the "Debtor") is the Debtor in a Chapter 11 bankruptcy case. On April 6, 2009, the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq., Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. The Debtor is the party proposing the Plan sent to you in the same envelope as this document. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganization plan. In other words, the Proponent, who is the Debtor, seeks to accomplish payments under the Plan by completing the construction of its condominium units, marketing and selling the units and paying off its creditors from its operation and the sale of its units. The Effective Date of the proposed Plan is the first day of the month following thirty days after the entry of the order confirming the Plan, unless such order is stayed, in which case it shall be the first day of the month following thirty days after the stay of the confirmation order is not longer in effect.

**A.      Purpose of This Document**

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

    **(1)      WHO CAN VOTE OR OBJECT,**

    **(2)      WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD  RECEIVE IN LIQUIDATION,**

    **(3)      THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS**

1        **DURING THE BANKRUPTCY,**

2    **(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR**

3          **NOT TO CONFIRM THE PLAN,**

4    **(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

5    **(6)    WHETHER THIS PLAN IS FEASIBLE.**

6        This Disclosure Statement cannot tell you everything about your rights.  You should consider

7 consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is

8 the best course of action for you.

9        Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies

10 between the Plan and the Disclosure Statement, the Plan provisions will govern.

11        The Code requires a Disclosure Statement to contain adequate information" concerning the

12 Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure

13 Statement, containing enough information to enable parties affected by the Plan to make an informed

14 judgment about the Plan. Any party can now solicit votes for or against the Plan.

15 **B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

16        THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS

17 DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET

18 BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN

19 THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST

20 HOLDERS IN THIS CASE.

21        **1.    Time and Place of the Confirmation Hearing**

22        The hearing where the Court will determine whether or not to  confirm the Plan will take place

23 on February 16, 2011, at 9:30 A.M., in Courtroom 1539, Royball Federal Courthouse, 255 East Temple

24 Street, Fifteenth Floor, Los Angeles, California 90012.

25        **2.    Deadline For Voting For or Against the Plan**

26        If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and

27 return the ballot in the enclosed envelope to William H. Brownstein & Associates, Professional

28 Corporation, 1250 Sixth Street, Suite 205, Santa Monica, California 90401. Fax: (310) 576.3581;

1  Email: Brownsteinlaw.bill@gmail.com.

2       Your ballot must be received by 4:00 p .m. on February 2, 2011,  or it will not be counted.

3       **3.    Deadline For Objecting to the Confirmation of the Plan**

4       Objections to the confirmation of the Plan must be filed with the Court and served upon

5  William H. Brownstein & Associates, Professional Corporation, 1250 Sixth Street, Suite 205, Santa

6  Monica, California 90401. Fax: (310) 576-3581.  Email: Brownsteinlaw.bill@gmail.com. by 4:00 p.m.

7  on February 2, 2011.

8       **4.    Identity of Person to Contact for More Information Regarding the Plan**

9       Any interested party desiring further information about the Plan should contact William H.

10  Brownstein, Esq., of William H. Brownstein & Associates, Professional Corporation, 1250 Sixth

11  Street, Suite 205, Santa Monica, California 90401. Fax: (310) 576-3581.  Email:

12  Brownsteinlaw.bill@gmail.com.

13  **C.    Disclaimer**

14       The financial data relied upon in formulating the Plan is based on the records and financial

15  records and data maintained by the Debtor. The information contained in this Disclosure Statement is

16  provided by the Debtor. The Plan Proponent represents that everything stated in the Disclosure

17  Statement is true to the Proponent's best knowledge.  The Court has not yet determined whether or not

18  the Plan is confirmable and makes no recommendation as to whether or not you should support or

19  oppose the Plan.

20

21                              **II.**

22                          **BACKGROUND**

23  **A.    Description and History of the Debtor's Business**

24       The Debtor is a California limited liability company which was formed in accordance with

25  California Corporations Code §§17051 and 17052 on November 4, 2003 and it is in good standing and

26  allowed to conduct business in the State of California.

27       The Debtor has been in this business since its formation on November 4, 2003 and is has been

28  operating under Entity Number 200333710004 issued by the Secretary of State of the State of

                                  - 3 -

1  California.

2      The Debtor is in the business of buying, constructing, operating and selling real property and

3  managing and holding real property for investment and sale.

4  **B.      Principals/Affiliates of Debtor's Business**

5      Jay H. No, Yoon Sik Oh and Yong Ku Yi, are the only members of the Debtor. Ahron

6  Zilberstein is the Debtor's manager.

7  **C.      Management of the Debtor Before and After the Bankruptcy**

8      Jay H. No, Yoon Sik Oh and Yong Ku Yi are the only members of the Debtor. Ahron

9  Zilberstein is the Debtor's manager and has been managing the Debtor's operations along with the

10  input and assistance of Debtor's members since late 2008, which is when he was hired as the manager.

11      Mr. Zilberstein's experience is as follows:

12      1982 Mr. Zilberstein received a bachelors of science degree from U.S.C. in Accounting, during

13  which time he was on the Deans List for Academic Excellence.

14      After graduating from college Mr. Zilberstein's first job was with Barclay's Bank where he

15  handles financing of commercial properties, account receivables and payables which he did for

16  approximately four years.

17      After that time he has been on his own managing, operating and developing commercial and

18  residential properties throughout Southern California for the past 25 years.

19      During that time Mr. Zilberstein has been responsible for the management of approximately

20  1,000 units, including houses, office buildings, commercial properties, condominium properties. He

21  also oversees partnerships, LLC's, corporations and other entities.

22      Mr. Zilberstein has also been involved in purchasing distressed properties which he has been

23  involved in renovating, overseeing the entire operations.

24  **D.      Events Leading to Chapter 11 Filing**

25      Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

26      a.      At the time of the filing the Debtor  was in the final stage of construction of a 13 unit

27  high quality condominium project located at 332 S. Virgil Street, Los Angeles, California 90020 (the

28  "Virgil Property" and/or the "Project").

- 4 -

1      b.     In order to fund the Project the Debtor expended substantial funds, both in the form of

2 bank financing and from loans and contributions from its third parties and its Members. Total secured

3 loans aggregating approximately $5,792,199.05 were obtained in addition to incurring unsecured debt

4 in the approximate amount of $752,215.76, all of which was used for the construction and operation of

5 the Virgil Property,

6      c.     As of the time of the commencement of the Debtor's bankruptcy case on April 6, 2009

7 (the "Filing Date") the Debtor valued the Virgil Property at $3,000,000.00 in its then partially

8 completed condition. That valuation was not supported by a formal appraisal of its value, which

9 appraisal the Debtor subsequently obtained.

10      d.     On the Filing Date the Debtor estimated that it would take approximately $500,000 to

11 complete the Project. However, to pinpoint with accuracy the costs associated with the completion and

12 to thereby be in a position to seek investors and funding necessary to complete the project and fund a

13 reorganization plan the Debtor retained the services of Shir Construction, who estimated that the total

14 cost to complete the Project to be in the vicinity of $629,023.68, and as of June 30, 2010 the estimate

15 for the cost to perform all construction necessary to complete the Project amounts to $789,988.00. See

16 Exhibit "B" to this Disclosure Statement.

17      e.     The filing of this case was precipitated as a result of the fact that the secured creditor,

18 East West Bank ("EWB"), was on the eve of conducting a Trustee Sale under the power of sale clause

19 contained in its note secured by a deed of trust against the Virgil Property. At that time,

20 notwithstanding the fact that the Debtor was negotiating for a loan modification and/or a forbearance

21 agreement, EWB apparently sold its position to The Braum - Lalehzarzadeh Living Trust (the "Trust")

22 at a substantial discount from its outstanding loan balance, and the Trust, with the avowed intention of

23 refusing to negotiate and to foreclose on the Project and to take over the Project, refused to negotiate

24 with the Debtor.

25      f.     The Debtor is also the owner of a 24% interest in the real property commonly known of

26 as 11848 Moorpark Blvd.. #A, Studio City, California 91604 (the "Moorpark Property"). That property

27 was also subject to a Trustee Sale set to take place shortly after the commencement of this case. The

28 Debtor was not the borrower on the Moorpark Property not is it obligated on the notes secured by

1   deeds of trust against that property.

2       g.    In the Debtor's business judgment, at the time of the filing of this bankruptcy case, its

3 filing was necessary in order to prevent the imminent loss of the Moorpark Property and the Virgil

4 Property that would have resulted from Trustee Sales of those properties  and it was commenced in

5 order to enable the Debtor to reorganize its financial affairs and to rehabilitate its business.

6       **E.**    **Significant Events During the Bankruptcy**

7       **1.**    **Bankruptcy Proceedings**

8       The following is a chronological list of significant events which have occurred <u>during</u> this case:

9       i.    This case commenced with the filing of a voluntary petition under Chapter 11 of the

10 Bankruptcy Code on April 6, 2009.

11       ii.    The duly noticed and scheduled first meeting of creditors pursuant to 11 U.S.C. §341(a)

12 (the "341(a) Meeting") took place on May 14, 2009 at 2:00 p.m.

13       iii.    At the time of the 341(a) Meeting it was disclosed that in the ordinary course of

14 business that the Debtor was allowing the Schriners Hospital (the "Schriners") to use its parking lot in

15 exchange for the Schriners providing insurance and security for the Virgil Property. The Trust objected

16 to that arrangement and thereafter, based on that objection, the Debtor terminated its consent to the

17 Schriners for the use its parking lot. As a consequence of that termination, however, the Schriners no

18 longer paid for nor provided insurance at its own cost for the Virgil Property, and thereafter the Debtor

19 has insured and provided security for the Virgil Property.

20       iv.    During the week between Christmas and New Years 2008, several items were "stolen"

21 from the Project, including air conditioning units, fixtures and cabinets in the units and other contents.

22 The Debtor attempted to make a police report but the police, stating that the taking were from

23 contractors that had not been paid and which taking was to retrieve product for which they were not

24 paid, resulted in no report. Additionally, at the time of the thefts based on the Debtor's investigation

25 into this matter it did not have insurance on this type of theft[1].

26   _____

27       [1]The Trust has apparently made a claim for insurance coverage for the loss. The Debtor aware

28 that it did not have insurance did not see any basis in making a claim, however, at the request of the
Trust it did inquire into coverage and it was told that it did not have insurance coverage at the time of

1        v.        As of the time of this Disclosure Statement the building permits issued to the Debtor

2  have expired. After consulting with the Los Angeles Department of Building & Safety ("LADB&S"),

3  once the Debtor obtains an order authorizing the financing necessary to complete the construction of

4  the Project, it will take approximately two (2) weeks to have the permits reissued at a cost of less than

5  $10,000.00., which has been included in the estimates attached to this Disclosure Statement for the

6  time and expense that it will entail to complete the Project.

7        vi.        In August 2009, the Debtor obtained valuations of the Project, copies of which are

8  incorporated to this Disclosure Statement as Exhibit "B".

9        Based on the Objections to the First Amended Disclosure Statement ("FADS") made by the

10  Trust, and the Court's sustaining a portion of the objections, the Debtor obtained appraisals under two

11  criteria:

12        1. the first is as 13 condominium units to be sold individually;

13        2. the second is to evaluate the property as a 13 unit apartment building, fully occupied with

14  cash flow from rental and based on the valuation as an apartment building.

15        The building has a unit mix of 5 x 2 bedrooms + 2 bathrooms, 5 x 3 bedrooms + 2

16  bathrooms, and 3 x3 bedrooms +3 bathrooms Estimates to complete the construction with a unit by

17  unit breakdown was provided by Shir Construction, an independent general contractor, dated

18  07/07/2010 and is attached to the Valuation report as Exhibit A at pages 7, 10, 30-124.

19        As reflected in the Valuation report, the purpose of that analysis was to evaluate an

20  uncompleted 13 unit building in two ways. The first was as 13 condominium units to be sold

21  individually.  The second is to evaluate the property as a 13 unit apartment building, fully occupied

22  with cash flows.  The building has a unit mix of 5x2+2, 5x3+2, and 3x3+3s.  Estimates to complete the

23  construction with a unit by unit breakdown was provided by Shir Construction, an independent general

24  contractor, dated 07/07/2010 and is attached as exhibit A.  The assumptions made in deriving the net

25  proceeds in regards to the notes were as follows.  The holding costs are based on a 1st note and deed of

26  trust of $1,649,353.25 at 6%  interest, which amounts to $8,246.77 a month a  2nd note and deed of

27  _____

28  the loss. The Debtor is unaware of whether the Trust, as the successor to EWB carried insurance to
cover such risks associated with carrying the loan with the Debtor.

1    trust for construction of $1,000,000 at 7.5% interest, which amounts to $6,250.00 a month,

2    both for 12 months.  The first approach of selling individual units arrived at a net proceeds

3    $3,580,663 before paying off the first and second notes.  The approach valuing the property as an

4    apartment building arrived at a net proceeds of $3,074,600 before paying off the first and second notes.

5         vii.      The Trust contended at the time of the hearing on the adequacy of the Second Amended

6    Disclosure Statement ("SADS") that it had not obtained an appraisal of the Virgil Property and that a

7    valuation of $2,500,000 for plan purposes was appropriate. However, in the Declaration of Stacy Sokol

8    in Support of Secured Creditor Braum-lalehzarzadeh Living Trust Motion Dismissing or Converting

9    Chapter Ii Case to Chapter 7 Case filed on December 9, 2010 (the "Sokol Declaration"), the Trust

10   showed that it send the Los Angeles County Tax Collector a request for downward assessment of value

11   for the Virgil Project on aaa, 2010 for which the Trust stated that the value of the Virgil Project was

12   $1,710,000.00:. See Exhibit A for copies of the relevant pages of the Stacy Declaration, P:6, L:19-24,

13   and Exhibit 4 P:56-84, which shows the letter and applications signed on behalf of the Trust alleging

14   that he is the Agent for the owner of the Virgil Property.

15         viii.     The Debtor filed its requests for downward assessment of the Virgil Property on aaa.

16         ix.       Cost estimate(s) to complete the Project $789,988. See  Exhibit A at pages 7, 10, 30-

17   124.

18         x.        On July 18, 2008,  the MECHANIC'S LIEN (Claim of Lien) in the amount of

19   $5,644.00 was filed by Creditor Celle Crete Corporation.

20         xi.       On December 9, 2008,  the MECHANIC'S LIEN (Claim of Lien) in the amount of

21   $6,948.83 was filed by Creditor Beacon Concrete, Inc.

22         xii.      On January 28, 2009, the NOTICE OF PENDING ACTION was filed as Case No.

23   09K00785 was filed by Beacon Concrete, Inc. against SUNG KOOK AHN, an individual doing

24   business as S&D CONSTRUCTION; JOY INVESTMENT GROUP, LLC; Does 1 through 400,

25   inclusive.

26         xiii.     On December 9, 2008,  the MECHANIC'S LIEN (Claim of Lien) in the amount of

27   $7,679.44 was filed by Creditor Atlas Builders Supply Co., Inc.

28         xiv.      On January 9, 2009,  the MECHANIC'S LIEN (Claim of Lien) in the amount of

1 | $16,657.00 was filed by Creditor National Paving Company, Inc.

2 |        xv.    On January 20, 2009,  the MECHANIC'S LIEN (Claim of Lien) in the amount of

3 | $5,541.93 was filed by Creditor All American Asphalt.

4 |        xvi.    On February 11, 2009,  the MECHANIC'S LIEN in the amount of  $22,271.00 was filed

5 | by Creditor Tops Development Landscape Co.

6 |        xvii.    On February 20, 2009,  the MECHANIC'S LIEN (Claim of Lien) in the amount of

7 | $15,099.34 was filed by Creditor WEST COAST PROFESSIONAL GROUP.

8 |        xviii.   On March 4, 2009,  the MECHANIC'S LIEN in the amount of  $17,00.00 was filed by

9 | Creditor JM Communications, Inc.

10 |        xix.    On March 13, 2009,  the MECHANIC'S LIEN in the amount of  $24,055.78 was filed

11 | by  Creditor ALPHA SYSTEMS FIRE PROTECTION, INC.

12 |        xx.    On March 30, 2009,  the STATE OF CALIFORNIA MECHANIC'S LIEN (Claim of

13 | Lien - Civil Code Section 3014) in the amount of  $6,900.00 was filed by  Creditor SANHER

14 | CONSTRUCTION CO.

15 |        xxi.    On March 31, 2009,  the MECHANIC's LIEN in the amount of  $25,900.00 was filed

16 | by  Creditor Fujitec America.

17 |        xxii.    On April 20, 2009, the MECHANIC's LIEN in the amount of $7,000.00 (California

18 | Civil Code §3084) was filed by TKIM ASSOCIATES 2500 WILSHIRE BLVD., #1122, LOS

19 | ANGELES, CA 900057;

20 |        xxiii.   On May 12, 2009 the notice of perfection of mechanics liens (11 USC section

21 | 362(b)(3); 546(b)(2)(A)) was filed by Chan Yong Jeong, attorney for creditor Tops

22 | Development/Landscape Co.

23 |        xxiv.   On June 10, 2009 the notice of perfection of mechanic's lien was filed by Michael J.

24 | Coppess, attorney for Creditor Atlas Builders Supply Co., Inc with proof of service.

25 |        xxv.    On June 15, 2009 the notice by Creditor Fujitec America of Perfection of Mechanic's

26 | Lien was filed.

27 |        xxvi.   On August 20, 2009, Wilshire State Bank, the successor to Mirae Bank filed its proof of

28 | claim, Number 12,  under which it shows that it recorded a UCC Financing Statement in order to

1    secure its claim to Debtor's properties in the amount of $312,169.07.

2        xxvii.   On July 7, 2009 the notice of motion and motion for relief from the automatic stay with

3    supporting declarations REAL PROPERTY RE: 332 South Virgil Avenue, Los Angeles, CA 90020

4    (the "Virgil Property"). MOVANT: THE BRAUM - LALEHZARZADEH LIVING TRUST (hereafter

5    "Braum Trust") was filed, the hearing on which was scheduled to take place on August 4, 2009 (the

6    "First RFS Motion").

7        xxviii.  On July 16, 2009 the Notice of Motion and Motion to Convert Case From Chapter 11 to

8    7 and notice of motion pursuant to 11 USC § 1112(b) or, in the alternative, appointment of a chapter 11

9    trustee pursuant to 11 USC § 1104(a); memorandum of points and authorities in support thereof;

10   declaration of Ronald Michelman in support thereof was filed by Ronald E. Michelman, attorney for

11   secured creditor, The Braum Lalehzarzadeh Living Trust (the "First Conversion Motion") was filed.

12       xxix.    On July 29, 2009 the Debtor filed its Response to the First RFS Motion.

13       xxx.     On July 30, 2009 the Debtor filed its Opposition to the First Conversion Motion.

14       xxxi.    On July 30, 2009 the Braum Trust filed what it called its response to motion for order to

15   terminate, annul, modify or condition the automatic stay and declaration(s) in support filed by Debtor

16   Joy Investment Group, LLC) Filed by Ronald Michelman, attorney for creditor The Braum -

17   Lalehzarzadeh Living Trust, Secured Creditor with proof of service.

18       xxxii.   On July 30, 2009 the errata (Notice) was filed on behalf of the Braum Trust.

19       xxxiii.  On July 31, 2009 the Joint/Joinder was filed by Jay No, Yoon Sik Oh, Yong Ku Yi,

20   Asiana Capital, Nancy Murakami and Anna Yoon to the responses filed by the Debtor to the RFS

21   Motion and the Conversion Motion.

22       xxxiv.   On August 3, 2009 the Errata (Second Notice) as to the RFS Motion was filed on behalf

23   of the Braum Trust.

24       xxxv.    On August 4, 2009 the Reply to Debtor's response to the Conversion Motion was filed

25   on behalf of the Braum Trust.

26       xxxvi.   On August 4, 2009 the Document re: evidentiary objections to declarations of Ahron

27   Zilberstein and Jay No filed in support of the debtors opposition to the movants motion for conversion

28   or, in the alternative, appointment of a chapter 7 trustee was filed on behalf of the Bram Trust.

1      xxxvii.      On August 13, 2009 the court continued the hearing on the Conversion Motion

2 until September 15, 2009 at 11:00 AM.

3      xxxviii.      On August 20, 2009 the court set a status conference on the status of the

4 reorganization case for September 15, 2009 at 11:00 A.M.

5      xxxix.  On August 28, 2009 the Court denied the RFS Motion filed by the Bram Trust.

6      xl.      On September 15, 2009 the Debtor served all parties in interest with the Notice of Bar

7 Date for Filing Claims of November 16, 2009.

8      xli.      On September 15, 2009 the Debtor filed its application to employ general bankruptcy

9 and insolvency counsel and the notice thereof.

10      xlii.      On September 15, 2009 the Court continued the Conversion Motion until October 13,

11 2009 at 10:00 A.M.

12      xliii.      On October 18, 2009 the Debtor filed Adversary case 2:09-ap-02352 which was styled

13 as the Notice of Removal of Entire Action as to All Parties of the Complaint filed by Indemnity

14 Company of California.

15      xliv.      On October 27, 2009 the Court entered the order denying the Conversion Motion

16 thereby denying either the conversion of this case or the appointment of a chapter 11 trustee.

17      xlv.      On December 12, 2009 the Court granted the employment of William H. Brownstein &

18 Associates, P.C. as counsel for the Debtor retroactively to the date of the commencement of the case.

19      xlvi.      On January 26, 2010 a hearing on Debtor's application for an extension of time to file a

20 Plan and Disclosure Statement was heard and granted, giving the Debtor until April 1, 2010 to file its

21 Disclosure Statement and Plan of Reorganization.

22      xlvii.    A continued status conference took place on February 16, 2010 at 11:00 a.m. in this

23 case.

24      xlviii.    The Court set and conducted a continued status conference and a hearing on the

25 adequacy of the Disclosure Statement describing Chapter 11 Plan on April 27, 2010 at 2:00 P.M., after

26 which time it continued those hearings until June 15, 2010 at 2:00 P.M. and again until July 20, 2010 at

27 11:00 a.m.

28      xlix.      After 8:00 p.m. on July 15 and before 10:00 a.m. on July 16, 2010, someone, believed to

1  be the Trust, changed all locks on the Project, making it impossible for the Debtor to obtain access to

2  the Project. A police report was made of this violation of the Debtor's quiet enjoyment of the Project

3  and to confirm the violation of the automatic stay.

4      l. At the hearing on the adequacy of the First Amended Disclosure Statement which took place

5  on September 15, 2010, the Trust appeared and the following objections were sustained:

6      (1)    Paragraph D [Debtor Continues To Fail To Disclose And Subordinate The Claims Of

7  Insiders]

8      (2)    Paragraph E [Disclosures Made By The Debtor About The Proposed New Financing

9  Are Wholly Inadequate For Creditors To Make Any Determination Of The Suitability Of The

10 Financing Under The Plan ];

11     (3)    Paragraph G [Inadequate Description Of Assets];

12     (4)    Paragraph H [Inadequate Support For Projections];

13     (5)    Paragraph I  [Other Inadequate Disclosure: 1. Debtor Has Failed To Provide

14 Information On Management Skills; 2.  Debtor Has Provided Misleading Information As to Payment

15 Of Unsecured Claims.]

16     li.    The Trust filed its Motion for Relief from the Automatic Stay (the "2nd RFS Motion"),

17 the hearing on which was initially scheduled to take place on December 2, 2010 at 9:30 a.m, ,was

18 continued until December 15, 2010 and again to February 16, 2011 at 9:30 a.m..

19     lii.    The Debtor filed its opposition to the relief from stay motion on November 18, 2010

20 and in that opposition it requested a continuance to December 15, 2010 at 9:30 a.m. to have the hearing

21 at the same time as the conversion or dismissal motion and the hearing on the adequacy of the Second

22 Amended Disclosure Statement ("SADS"). The Debtor also sought a denial of that motion and

23 sanctions against the Trust and its counsel for violating the provisions of the LBR's in failing to

24 disclose the true reason that the Bankruptcy Court denied the prior relief from stay motion.

25     liii.  The Trust filed its Second Motion to Convert or Dismiss Case, which was denied without

26 prejudice on December 15, 2010 at 9:30 a.m.

27     liv. The Court approved the SADS as modified as containing adequate information on

28 December 15, 2010, and set December 30, 2010 as the last date for filing the Modified Second

1  Amended Disclosure Statement and it set a Plan Confirmation hearing for February 16, 2011 at 9:30

2  a.m.

3      lv.      At the hearing on the adequacy of the SADS the Honorable Peter H. Carroll,

4  Bankruptcy Judge found that subject to certain modifications that had to be filed with the Court with a

5  draft order no later than December 30, 2010, that the Disclosure Statement contains adequate

6  information.  The Court sustained the objections contained in ¶H of the Objections, which revisions the

7  Debtor discussed and agreed on making at the time of the December 15, 2010 hearing on the adequacy

8  of the SADS.

9      Currently, the following significant adversary proceedings and motions are still pending:

10      i.      Motion for relief from the automatic stay filed by the Trust and scheduled to be heard on

11  February 16, 2011 at 9:30 a.m.

12      ii.      Stipulation to equitably subordinate the following claims will be lodged with the Court

13  and if such is not obtained a motion for such relief will be filed. It is noted that as these are all insider

14  claims they do not have the right to vote on the Plan:

| | Name | Date of Note | Amount of Claim |
|---|---|---|---|
| a. | Jay and Misei No Revocable Trust | 04/15/2008 | $81,821.87 |
| b. | Jay and Misei No Revocable Trust | 11/09/2007 | $55 000.00 |
| c. | Jay H. No | 11/07/2005 | $81,821.87 |
| d. | Jay H. No | 02/11/2008 | $35,453.15 |
| e. | Sav-On Int'l Fixture Co., Inc. | 06/12/2008 | $78,054.79 |
| f. | Yoon Sik Oh | 02/27/2008 | $35,282.50 |
| g. | Yoon Sik Oh | 02/27/2008 | $89,727.40 |
| h. | Yoon Sik Oh | 04/15/2008 | $55,000.00 |
| i. | Yoon Sik Oh | 11/09/2008 | $78,227.74 |
| | Total | | $535,444.32 |

25      **2.      Other Legal Proceedings**

26      In addition to the proceedings discussed above, the Debtor is currently involved in the

27  following nonbankruptcy legal proceedings:

28      There are no such proceedings.

3.    **Actual and Projected Recovery of Preferential or Fraudulent Transfers or Mechanic's Lien creditors.**

i.    **Preferential and Equitably Subordinated Transfers.**

The Debtor has performed an evaluation of potential fraudulent and preferential transfers and mechanic's lien creditors and as agreed by the Court at the December 15, 2010 hearing on the adequacy of the Disclosure Statement, it has determined that the following avoidable transfers have occurred.

The following creditors have recorded deeds of trust against the Virgil Project, which as of the date of the commencement of the case had claims in the following amounts, all of which are being treated as equity holders of the Debtor subordinated to general unsecured creditors:

| | Claimant | Insider | Date of Claim | Amount of Claim on Petition Date | Preference ( Y or N) | Equitably Subordinated |
|---|---|---|---|---|---|---|
| j. | Jay and Misei No Revocable Trust | Y | 04/15/2008 | $81,821.87 | Y | Y |
| k. | Jay and Misei No Revocable Trust | Y | 11/09/2007 | $55 000.00 | Y | Y |
| l. | Jay H. No | Y | 11/07/2005 | $81,821.87 | Y | Y |
| m. | Jay H. No | Y | 02/11/2008 | $35,453.15 | Y | Y |
| n. | Kuan LLC | No | 09/21/2005 | $525,260.27 | Y | N |
| o. | Sav-On Int'l Fixture Co., Inc. | Y | 06/12/2008 | $78,054.79 | Y | Y |
| p. | Yoon Sik Oh | Y | 02/27/2008 | $35,282.50 | Y | Y |
| q. | Yoon Sik Oh | Y | 02/27/2008 | $89,727.40 | Y | Y |
| r. | Yoon Sik Oh | Y | 04/15/2008 | $55,000.00 | Y | Y |
| j. | Yoon Sik Oh | Y | 11/09/2008 | $78,227.74 | Y | Y |
| | Total | | | $1,060,704.59 | | |

As all of the foregoing notes other than Kuan LLC, were filed by insiders and the purported loans were in effect substitutes for equity contributions to the Debtor, those notes of insiders will be treated as equity in the Debtor, and they will be equitably subordinated to the creditor claims and treated as equity under the Plan. The claims of Kuan LLC is a preferences and as such, under the terms of the accompanying Plan its liens avoided and it will be treated as general unsecured creditor.

- 14 -

ii.    Mechanics Lien Holders.

The following creditors filed Mechanics Liens against the Debtor. As determined by the Bankruptcy Court on December 15, 2010, only those who have perfected their claims will be treated as a separate class of claims under the Plan. Thus, without waiving the right to object to the claims the Debtor is treating the following claimants who recorded Mechanics Liens against the Virgil Property as follows;

| Recording Date | Name | Amount | Valid Amt | Notes |
|---|---|---|---|---|
| July 18, 2008 | Celle Crete Corporation | $5,644.00 | $0.00 | Not perfected no POC filed |
| December 9, 2008 | Beacon Concrete, Inc. | $6,948.83 | $6,948.83 | Perfected no POC filed |
| January 28, 2009 | Beacon Concrete, Inc. | | | Notice of Pending Action |
| December 9, 2008 | Atlas Builders Supply Co., Inc. | $7,679.44 | $7,679.44 | Perfected no POC filed |
| January 9, 2009 | National Paving Company, Inc. | $16,657.00 | $0.00 | Not perfected no POC filed |
| January 20, 2009 | All American Asphalt | $5,541.93 | $0.00 | Not perfected no POC filed |
| February 11, 2009 | Tops Development Landscape Co. | $22,271.00 | $22,271.00 | Perfected and filed a POC |
| February 20, 2009 | WEST COAST PROFESSIONAL GROUP. | $15,099.34 | $0.00 | Not perfected no POC filed |
| March 4, 2009 | JM Communications, Inc. | $17,000.00 | $0.00 | Not perfected no POC filed |
| March 13, 2009 | ALPHA SYSTEMS FIRE PROTECTION, INC. | $24,055.78 | $0.00 | Not perfected no POC filed |
| March 30, 2009, | SANHER CONSTRUCTION CO. | $6,900.00 | $0.00 | Not perfected no POC filed |
| March 31, 2009 | Fujitec America. | $25,900.00 | $25,900.00 | Perfected and filed POC |
| April 20, 2009 | TKIM ASSOCIATES | $7,000.00 | $0.00 | Not perfected no POC filed |
| May 12, 2009 | Tops Development/Landscape Co. | | | notice of perfection of mechanics liens |
| June 10, 2009 | Atlas Builders Supply Co., Inc with proof of service. | | | notice of perfection of mechanic's lien |
| On June 15, 2009 | Fujitec America | | | Perfection of Mechanic's Lien |
| Total | | $160,697.32 | $62,799.27 | |

The Mechanic's Lien claimants that have perfected their claims will each be placed into a separate class and have its liens will be valued at zero. The Mechanic's Lien claimants who have

1  perfected their claims will be paid in the same manner as the Unsecured Creditor class. Those that are

2  not perfected will be treated as general unsecured creditors and their claims added to the unsecured

3  creditor class.

4  **4.    Procedures Implemented to Resolve Financial Problems**

5  To attempt to fix the problems that led to the bankruptcy filing, Debtor has implemented the

6  following procedures:

7  After the commencement of this case the Debtor has utilized the services of Ahron Zilberstein

8  as its manager. The efforts of Mr. Zilberstein, who has worked  along with the members of the Debtor,

9  were utilized to attempt to obtain estimates for the funding to complete the condominium project, to

10  perform such work at a minimum of cost and to arrive at a meaningful method of marketing and selling

11  the units once construction was completed.

12  The Debtor obtained the estimates for the cost to complete the project of $789,988.00 and it has

13  also received a firm commitment for $1,000,000 in funding, a commitment from its members to make

14  a new value contribution of $200,000.00 to the Debtor. It is noted that an escrow has opened at Central

15  Escrow Company, in with escrow as of April 23, 2010, $941,848.00 was on deposit, which, under the

16  terms of this Disclosure Statement and pursuant to Rule 3020, will be on deposit in order to effectuate

17  the consummation of the confirmed plan of reorganization (the "Plan").

18  The Members have agreed to guarantee a return of at least 5% of the allowed amount of to

19  unsecured creditors claims to those that do not waive such treatment under the Plan. Thus, if the net

20  proceeds generated from the sale of the Project and the new value contributions are insufficient to

21  result in the minimum 5% return, the deficiency will be contributed as additional new value

22  contributions to the reorganized Debtor to make up that deficit.

23  **5.    Current and Historical Financial Conditions**

24  As reflected in the most recent Operating Report for the period ending 10/31/2010, the Debtor

25  has the following assets:

26  Cash in Bank  $393.44.

27  Its Vitgil Property, which, according to the most recent valuation will generate $3,580,633 after

28  the project is completed. The Current market value of the Virgil Property is $1,710,000, which is based

- 16 -

1    on the November 23, 2010 letter from STACY L. SOKOL, Attorney at Law, as an attorney for the

2    Trust, which was sent to the Office of Assessor, 500 West Temple Street, Room 225 Los Angeles, CA

3    90012-2770 in which he stated in pertinent part:

> "Enclosed you will find Form RP-87, 2010 Decline-in-Value Application, for each of the above-referenced units at the property. Also enclosed is an appraisal dated August 30, 2010 prepared by Marie Mustard. The property comprises an uncompleted 13 unit condominium building. The property was almost 97% completed in late summer of 2008. In February 2009, the .property was ransacked, and vandals removed all of the interior and roof top air conditioning units, refrigerators, washers, dryers, dishwashers, toilets, sinks, shower doors, cabinets doors, and removable furnishings and equipment. The owner failed to make an insurance claim and in April 2009, in order to avoid foreclosure of the first loan, the owner filed for bankruptcy. The property has been in bankruptcy since then. The bankrupt debtor estimates that the cost to repair the property and bring the units to completion will be over $670,000. Attached is a copy of the debtor's proposed budget to complete the repairs.
>
> Enclosed is a chart showing the current assessed values of each of the units. Given the depressed market for condominiums, it is unlikely that when the project is completed that a sale of the units as condominiums will bring the highest and best value. Based upon the appraisal, the property is valued at $2,380,000 as an apartment building. See page 70 of the appraisal. Sales of similar properties are shown on page 68 of the appraisal. Its value must be reduced by the cost to complete the units of $670,000, to reach a total combined value of $1,710,000."[2]

The identity and fair market value of the estate's assets are listed in Exhibit A.  See also the

Debtor's financial history set forth in Exhibit B.


### III.

### SUMMARY OF THE PLAN OF REORGANIZATION

**A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes

according to their right to priority. The Plan states whether each class of claims or interests is impaired

or unimpaired.  The Plan provides the treatment each class will receive.

**B.    Unclassified Claims**

---

[2] It is noted that on December 15, 2010 after the Court inquired of counsel for the Trust whether the Trust had obtained an appraisal of the Virgil Property it was told that they had not and that they would go along with a valuation of $2,500,000.00. That is contradicted by the Declaration of Mr. Sokol, Trust counsel and was in his Declaration which was filed with this Court on or about December 10, 2010.

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

**1.    Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan (see Exhibit F for detailed information about each administrative expense claim):

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| William H. Brownstein & Associates, | $100,000.00 | Paid in full on effective date of |
| Los Angeles County Tax Collector | $68,404.37 | Paid in full on effective date of |
| Clerk's Office Fees | $0.00 | Paid in full on effective date of plan |
| Office of the U.S. Trustee Fees | $325.00 | Paid in full on effective date of |
|  | $168,729.37 |  |

<u>Court Approval of Fees Required</u>:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtor will need to pay approximately $168,729.37 worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim.  As indicated elsewhere in this Disclosure Statement, Debtor will have approximately $1,200 000.00 amount of cash on hand on the Effective Date of the Plan.  The source of this cash will be money in the DIP bank account, loans and new value

- 18 -

contributions to the Debtor. After crediting the administrative creditor claims there will be

approximately $1,031,270.63 available for payment to other creditors and for the consummation of the

Plan.

### 2.    Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by

Code Section 507(a)(8).  The Code requires that each holder of such a 507(a)(8) priority tax claim

receive the present value of such claim in deferred cash payments, over a period not exceeding six

years from the date of the assessment of such tax. As the Debtor will have approximately

$1,027,597.18 available for payment of its priority tax claims of approximately $9,516.02, the balance

remaining after the payments will be approximately $1,018,081.16.

The following chart lists all of the Debtor's Section  507(a)(8) priority tax claims and their

treatment under the Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| ● Name = Internal Revenue Service<br>● Type of tax = FICA, FUT<br>● Date tax assessed =NA | $2,800.00 | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br><br>● End date<br><br>● Interest Rate %<br><br>● Total Payout Amount 100% | = Once<br>= 2,800.00<br>= Effective Date of Plan<br>= Effective Date of Plan<br>= 0<br><br>= 100% |
| ● Name = L.A. City Tax Collector<br>● Type of tax = City License<br>● Date tax assessed = | $6,716.02 | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br><br>● End date<br><br>● Interest Rate %<br><br>● Total Payout Amount 100% | = Once<br>= 6,716.02<br>= Effective Date of Plan<br>= Effective Date of Plan<br>= 0<br><br>= 100% |

### 3.    Classified Claims and Interests

a..    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists

all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 1 | Secured claim of:<br>●Name =L.A. County Tax Collector<br>●Collateral description = The Virgil Property<br>●Collateral value = $1.710,000.00<br>●Priority of security int. = 1st<br>●Principal owed =$60,646.75<br>●Pre-pet. arrearage amount =60,646.75<br>●Post-pet. arrearage amount =<br>● Total claim amount = $60,646.75 | N | Y | ● Pymt interval<br>● Pymt amt/interval<br>● Balloon pymt<br>● Begin date<br>● End date<br>● Interest rate %<br>● Total payout<br>● Treatment of Lien | ● Once<br>● $60,646.75<br>● $60,646.75<br>● 30 days after the EDoP<br>● 30 days after the EDoP<br>● 0.0<br>● 100%<br>● Lien will remain in the amount of the allowed amount of the tax claim. Will be paid with interest accruing after the EDoP. The balance of the claim, which consists of penalties of $5,567.74 and redemption penalties of $6,404.70 will be treated as a general unsecured creditor claim and paid in the class of general unsecured creditors. Once the payment of the $60,646.75 tax claim is paid the tax lien will be deemed fully satisfied and the lien for past-due taxes expunged and removed from the Property. |
| 2 | Secured claim of:<br>●Name = The Braum-Lalehzarzadeh Living Trust<br>●Collateral description = Virgil Property<br>●Collateral value = 1,710,000.00<br>●Priority of security int. = 1st T.D. Priority subordinated to tax claims and the claims of mechanic lien creditors<br>●Principal owed = $4,500,000<br>●Pre-pet. arrearage amount = $327,085.69<br>●Post-pet. arrearage amount = $0.00<br>● Total claim amount = $4,827,085.69 | N | Y | ● Pymt interval<br><br><br><br>● Pymt amt/interval<br>● Balloon pymt<br><br><br><br>● Begin date<br>● End date<br><br>● Interest rate %<br><br>● Total payout % | Upon closing of properties and after the payment in full of the Class 1 creditor and the post-petition loan<br>= See Exhibit "A" Pg 15<br>= See Exhibit "A"<br>= Once senior liens and post petition financing paid in full payments start with sales<br>= See Exhibit "A" EDOP<br>= See Exhibit "A"<br>= 6.0% post confirmation 100% secured claim. Undersecured portion as an unsecured creditor<br>Lien is impaired in that the secured portion will remain as a secured creditor claim in the amount of $1,649,353.25 and the undersecured portion treated as a general unsecured creditor claim. The $1,649,353.25 lien will be paid monthly at interest only based on 6% per annum interest on |

- 20 -

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | the $1,649,353.25 loan and in addition, upon payment in full under the Plan, which payments will be made in accordance with Exhibit "A", the secured portion of the Class 3 claim will be deemed fully satisfied. The undersecured portion will be paid the same manner and percentages as the other unsecured creditor claims. |
| | 3 | Secured claim of <br>●Name = Beacon Concrete, Inc <br>●Collateral description = Subject Property <br>●Collateral value = $0.00 <br>●Priority of security int. = 2nd <br>●Principal owed = $6,948.83 <br>●Pre-pet. arrearage amount = $6,948.83 <br>●Post-pet. arrearage amount = $0.00 <br>● Total claim amount = $6,948.83 | N | Y | ● Pymt interval <br>● Pymt amt/interval <br>● Balloon pymt <br>● Begin date <br>● End date <br>● Interest rate % <br>● Total payout <br>● Treatment of Lien | = Once <br>= $694.88 <br>= The one month anniversary of the EDOP <br>= The one month anniversary of the EDOP <br>= 0 <br>= 10% <br>Liens will be expunged and vacated upon payment and the claims of the Mechanic Lien creditor deemed paid in full |
| | 4 | Secured claim of <br>●Name = Atlas Builders Supply Co., Inc. <br>●Collateral description = Subject Property <br>●Collateral value = $0.00 <br>●Priority of security int. = 2nd <br>●Principal owed = $7,679.44 <br>●Pre-pet. arrearage amount = $6,948.83 <br>●Post-pet. arrearage amount = $0.00 <br>● Total claim amount = $6,948.83 | N | Y | ● Pymt interval <br>● Pymt amt/interval <br>● Balloon pymt <br>● Begin date <br>● End date <br>● Interest rate % <br>● Total payout <br>● Treatment of Lien | = Once <br>= $767.94 <br>= The one month anniversary of the EDOP <br>= The one month anniversary of the EDOP <br>= 0 <br>= 10% <br>Liens will be expunged and vacated upon payment and the claims of the Mechanic Lien creditor deemed paid in full |
| | 5 | Secured claim of <br>●Name = Tops Development Landscape Co. <br>●Collateral description = Subject Property <br>●Collateral value = $0.00 <br>●Priority of security int. = 3rd <br>●Principal owed = $22,271.00 <br>●Pre-pet. arrearage amount = $22,271.00 <br>●Post-pet. arrearage amount = $0.00 <br>● Total claim amount = $22,271.00 | N | Y | ● Pymt interval <br>● Pymt amt/interval <br>● Balloon pymt <br>● Begin date <br>● End date <br>● Interest rate % <br>● Total payout <br>● Treatment of Lien | = Once <br>= $2,227.10 <br>= The one month anniversary of the EDOP <br>= The one month anniversary of the EDOP <br>= 0 <br>= 10% <br>Liens will be expunged and vacated upon payment and the claims of the Mechanic Lien creditor deemed paid in full |

| 6 | Secured claim of<br>●Name = Fujitec America.<br>●Collateral description = Subject Property<br>●Collateral value = $0.00<br>●Priority of security int. =4th<br>●Principal owed = $25,900.00<br>●Pre-pet. arrearage amount = $25,900.00<br>●Post-pet. arrearage amount = $0.00<br>● Total claim amount = $25,900.00 | N | Y | ● Pymt interval<br>● Pymt amt/interval<br>● Balloon pymt<br>● Begin date<br>● End date<br>● Interest rate %<br>● Total payout<br>● Treatment of Lien | = Once<br>= $2.590.00<br>= The one month anniversary of the EDOP<br>= The one month anniversary of the EDOP<br>= 0<br>= 10%<br>Liens will be expunged and vacated upon payment and the claims of the Mechanic Lien creditor deemed paid in full |
| 7 | Secured claim of:<br>●Name = Wilshire State Bank<br>●Collateral description = All properties as shown in UCC Financing Statement<br>●Collateral value = Equity $0<br>●Priority of security int. = 3rd<br>●Principal owed = $312,169.07<br>●Pre-pet. arrearage amount = $312,169.07<br>●Post-pet. arrearage amount = $0.00<br>● Total claim amount = $312,169.07 | N | Y | ● Balloon pymt<br>● Begin date<br><br>● End date<br><br>● Interest rate %<br>● Total payout %<br>● Treatment of Lien | = No<br>= EDOP<br><br>= When all properties are sold and close escrow<br>= 0<br>= 0%<br>Liens will be expunged and vacated upon entry of order confirming Plan. Payment will be made as a Class 8 creditor. |

### b.    Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtor's 507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7) priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim).

There are no creditors falling into this category

### c.    Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section

- 22 -

507(a).  The following chart identifies this Plan's treatment of the class containing <u>all</u> of

Debtor's general unsecured claims (see Exhibit H for detailed information about each general

unsecured claim):

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | INSIDER (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 8 | General unsecured claims<br>● Total amt of  claims = $3,579,507.51 | Y | BOTH | ● Pymt interval<br>● Pymt amt/interval<br>● Begin date<br>● End date<br>● Interest rate % 0<br>● Total payout % | = Upon sale of units<br>= Once the total secured creditor claims are paid in full the proceeds from the sale of the units will be paid to the unsecured creditors and shared pro-rata based on the amount of the unsecured claims<br>= @5.00% and will be made from the net profits after deducting the payments to E & N Financial, the lender to fund the Plan, the secured portion of the Virgil Property claims as units are sold after maintaining a reasonable cushion, other than those who have voluntarily waived receiving payment. The claims of $3,579,507.51 |
| 9 | Administrative convenience class | Y | Unknown | | Administrative convenience class of creditors are any creditor with a claim of $1,000 or less or those with a claim of more than $1,000 that voluntarily waives the difference. They will be paid the $1,000 30 days after the EDOP. They are impaired under the Plan |

**d.    Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.

If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest

1 holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If

2 the Debtor is an individual, the Debtor is the interest holder.

3    The following chart identifies the Plan's treatment of the class[60] of interest holders (see Exhibit

4 I for more detailed information about each interest holder):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 10 | Interest holders | Y | Interest holders, including those claimants whose secured claims are equitably subordinated to the other claims in the Debtor will retain their percentage interest in the Debtor with no payments based on ownership interests although, to the extent that they have claims as a creditor they will be paid in accordance with the treatment under such class of claims. The interest holders will be required to make new value contributions of $200,000 to the reorganized Debtor as a condition of maintaining their interest as well as guaranteeing that if that $200,000 plus the net proceeds generated from the sale of the Project is insufficient to return 5% of the unsecured portion of claim that they will contribute that additional amount. |

16

17 **C.    Means of Effectuating the Plan**

18    1.    Funding for the Plan

19    The Plan will be funded by the following:

20    a.    The cash on hand as of the effective date;

21    b.    New value contributions from existing members of the Debtor of $200,000.00;

22    c.    The net proceeds generated from the $1,000,000 loan which, after closing costs will be

23 $972,942.67 as more fully reflected in Exhibit "B";

24    d.    The net proceeds from the sale of the Debtor's properties; and

25    e.    Additional new value contributions which are necessary to guarantee a 5% return to

26 unsecured creditors not waiving their right to be treated as such to the extent that the total distribution,

27 without interest, is less than 5% of the allowed amount of their unsecured claim.

28    **2.    Post-confirmation Management**

1    Ahron Zilberstein and Jay No will manage the Debtor.

2        **3.    Disbursing Agent**

3        Ahron Zilberstein shall act as the disbursing agent for the purpose of making all distributions

4    provided for under the Plan. The funding of the Plan is proposed to occur from funding from an entity

5    in which Mr. Zilberstein's wife is the president and financially responsible.

6    Jay H. No, Yoon Sik Oh and Yong Ku Yi are the only members of the Debtor. Ahron Zilberstein is the

7    Debtor's manager and has been managing the Debtor's operations along with the input and assistance

8    of Debtor's members since late 2008, which is when he was hired as the manager.

9        Mr. Zilberstein's experience is as follows:

10        1982 Mr. Zilberstein received a bachelors of science degree from U.S.C. in Accounting, during

11    which time he was on the Deans List for Academic Excellence.

12        After graduating from college Mr. Zilberstein's first job was with Barclay's Bank where he

13    handles financing of commercial properties, account receivables and payables which he did for

14    approximately four years.

15        After that time he has been on his own managing, operating and developing commercial and

16    residential properties throughout Southern California for the past 25 years.

17        During that time Mr. Zilberstein has been responsible for the management of approximately

18    1,000 units, including houses, office buildings, commercial properties, condominium properties. He

19    also oversees partnerships, LLC's, corporations and other entities.

20        Mr. Zilberstein has also been involved in purchasing distressed properties which he has been

21    involved in renovating, overseeing the entire operations.

22        The Disbursing Agent shall serve without  bond and shall receive no compensation for

23    distribution services rendered and expenses incurred pursuant to the Plan.

24    **D.    Risk Factors**

25        The proposed Plan has the following risks:

26        1.    There is the risk that the cost to complete the project may exceed the amount of funding

27    that the Debtor has obtained.

28        2.    There is the risk that the City will not approve the work that is being performed by the

- 25 -

1    Debtor or that they may require additional work and the imposition of additional costs, thereby

2    delaying the completion of the project.

3            3.        There is the risk that upon the completion of the project that the sale of the units will

4    not generate the projected revenues, thereby decreasing the money available to the Debtor from such

5    sales, which proceeds are being used to fund the Plan.

6    **E.        Other Provisions of the Plan**

7            **1.        Executory Contracts and Unexpired Leases**

8            **a.        Assumptions**

9            The following are the unexpired leases and executory contracts to be assumed as obligations of

10    the reorganized Debtor under this Plan (see Exhibit C for more detailed information on

11    unexpired leases to be assumed and Exhibit D for more detailed information on executory contracts to

12    be assumed):

13            There are no such contracts to be assumed.

14            On the Effective Date, each of the unexpired leases and executory contracts listed above shall

15    be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the

16    Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you

17    are a party to a lease or contract to be assumed and you object to the assumption of

18    your lease or contract, you must file and serve your objection to the Plan within the deadline for

19    objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific

20    date.

21            **b.        Rejections**

22            On the Effective Date, the following executory contracts and unexpired leases will be rejected:

23            There are no leases to be rejected.

24            The order confirming the Plan shall constitute an Order approving the rejection of the lease or

25    contract.  If you are a party to a contract or lease to be rejected and you object to the

26    rejection of your contract or lease, you must file and serve your objection to the Plan within the

27    deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document

28    for the specific date.

- 26 -

1       THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

2 ARISING FROM THE REJECTION OF A LEASE OR CONTRACT WAS NOVEMBER 16, 2009.

3       Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not

4 timely filed, unless the Court later orders otherwise.

5       **c.**     **Abandonments.**

6       On the effective date of the Plan the debtor will abandon any and all interest that it has in the

7 Moorpark property. The Debtor was never a signatory on any loan secured by that Property not has it

8 assumed any such obligations with the lenders. Based on the fact that the Property is worth less than

9 the amount owed on it, and the Debtor in its business judgment has determined that it is more

10 burdensome than beneficial to maintain an interest in that property , it is abandoning its interest in that

11 property.

12       **2.**     **Changes in Rates Subject to Regulatory Commission Approval**

13       This Debtor is not subject to governmental regulatory commission approval of its rates.

14       **3.**     **Retention of Jurisdiction.**

15       The Court will retain jurisdiction to the extent provided  by law.

16 **F.**     **Tax Consequences of Plan**

17       CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY

18 AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS,

19 ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is

20 intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the

21 Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained

22 below are the only tax consequences of the Plan because the Tax Code embodies many complicated

23 rules which make it difficult to state completely and accurately all the tax implications of any action.

24       The following are the tax consequences which the Plan will have on the Debtor's tax liability:

25       To the extent that there is any discharge of indebtedness as a result of the confirmation of the

26 Plan, pursuant to IRS §108(c)  the Debtor will not be taxed on the discharge. Also, as the adjusted

27 basis in the properties owned by the Debtor are greatly in excess of their fair market values, the

28 discharge of indebtedness will not result in any tax liability to the Debtor.

1    It is noted however, that the members of the Debtor should consult their tax consultants

2  regarding any tax ramifications to them individually resulting from such discharge.

3

4                                          **IV.**

5                  **CONFIRMATION REQUIREMENTS AND PROCEDURES**

6    PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN

7  SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

8  CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion

9  is intended solely for the purpose of alerting readers about basic confirmation issues, which they may

10  wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES

11  NOT represent that the discussion contained below is a complete summary of the law on this topic.

12    Many requirements must be met before the Court can confirm a Plan.  Some of the

13  requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the

14  Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether

15  the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

16  **A.    Who May Vote or Object**

17        **1.    Who May Object to Confirmation of the Plan**

18    Any party in interest may object to the confirmation of the Plan, but as explained below not

19  everyone is entitled to vote to accept or reject the Plan.

20        **2.    Who May Vote to Accept/Reject the Plan**

21    A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest

22  holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an

23  impaired class.

24        **a.    What Is an Allowed Claim/Interest**

25    As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have

26  the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest

27  brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or

28  interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing,

- 28 -

1  either overrules the objection or allows the claim or interest for voting purposes.

2      THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS NOVEMBER

3  16, 2009. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or

4  interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's

5  schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in

6  interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in

7  interest has objected to the interest. Consult Exhibits F through L to see how the Proponent has

8  characterized your claim or interest.

9      **b.    What Is an Impaired Claim/Interest**

10      As noted above, an allowed claim or interest only has the right to vote if it is in a class that is

11  impaired under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights

12  of the members of that class. For example, a class comprised of general unsecured claims is impaired if

13  the Plan fails to pay the members of that class 100% of what they are owed.

14      In this case, the Proponent believes that classes 1-16 are impaired and that holders of claims in

15  each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes

16  that class 17 is  unimpaired and that holders of claims in each of these classes therefore do not have the

17  right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their

18  claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the

19  Proponent has incorrectly characterized the class.

20      **3.    Who is Not Entitled to Vote**

21      The following four types of claims are not entitled to vote: (1) claims that have been

22  disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections

23  507(a)(1), (a)(2), and (a)(8); (4) claims in classes that do not receive or retain any value under the Plan

24  and (5) insider claims which include the members of the Debtor, whom are insiders. Claims in

25  unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.

26  Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to

27  vote because such claims are not placed in classes and they are required to receive certain treatment

28  specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not

1    vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE

2    TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE

3    CONFIRMATION OF THE PLAN.

4    **4.    Who Can Vote in More Than One Class**

5    A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured

6    claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of

7    the claim and another ballot for the unsecured claim.

8    **5.    Votes Necessary to Confirm the Plan**

9    If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired

10    class has accepted the Plan without counting the votes of any insiders within that class, and (2) all

11    impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by

12    "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

13    **6.    Votes Necessary for a Class to Accept the Plan**

14    A class of claims is considered to have accepted the Plan when more than one-half (½) in

15    number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor

16    of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3)

17    in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

18    **7.    Treatment of Nonaccepting Classes**

19    As noted above, even if all impaired classes do not accept the proposed Plan, the Court may

20    nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the

21    Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is

22    commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on

23    nonaccepting classes of claims or interests if it meets all consensual requirements except the voting

24    requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable"

25    toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b)

26    and applicable case law.

27    **8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

28    The party proposing this Plan asks the Court to confirm this Plan by cramdown on impaired

- 30 -

1  classes  if any of these classes do not vote to accept the Plan.

2      Please note that the proposed Plan treatment described by this Disclosure Statement <u>cannot</u> be

3  crammed down on the following classes : There are no such classes. AS A RESULT, IF ANY OF

4  THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE

5  CONFIRMED.

6  **B.    Liquidation Analysis**

7      Another confirmation requirement is the "Best Interest Test", which requires a liquidation

8  analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that

9  claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must

10  receive or retain under the Plan property of a value not less than the amount that such holder would

11  receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

12      In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured

13  creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.

14  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales

15  proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in

16  proportion to the amount of their allowed claim in relationship to the amount of total allowed

17  unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid,

18  if any.

19      For the Court to be able to confirm this Plan, the Court must find that all creditors and interest

20  holders who do not accept the Plan will receive at least as much under the Plan as such holders would

21  receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here

22  for the following reasons:

23      First, the Plan guarantees a return of no less than 5% of the allowed amount of the non-insider

24  unsecured creditor claims from the sales proceeds generated from the sale of the Virgil Project and the

25  new value contributions to the Debtor.

26      Next, the Debtor will be allowed to complete its project and sell it for the maximum sales price

27  and generate the largest amount to creditors, paying 100% of the secured amount of the secured

28  creditor claims as that term is defined under Section 506(b) of the Bankruptcy Code, and the unsecured

portion at no less than 5% of that claim. In a liquidation, a trustee is appointed, the trustee has the obligation to promptly administer a case and as such it is likely inasmuch as the Trust is undersecured in the context of a liquidation case, rather than a reorganization case, that the Trust will foreclose on the Virgil Property, resulting in an insolvent estate with nothing going to unsecured creditors.

Finally, in a reorganization case the Debtor has obtained a commitment to loan the $1,000,000 to the Debtor, which, net of closing costs for the loan will generate $972,942.67 , to be used to complete the Project, that will result in the added value from a liquidation and allow the orderly sale of the condominium units. From the sales the Debtor will generate sufficient proceeds to pay 100% of the secured creditor claims as the units are sold and to guarantee with the new value contributions at least 5% of the principal amount without interest of the general unsecured creditor claims. Thus, the Plan provides substantially more than would be available in a Chapter 7 liquidation.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.  (See Exhibit E for a detailed explanation of how the following assets are valued. This information is provided by the Debtor.)

| ASSETS VALUE AT LIQUIDATION VALUES: | |
|---|---|
| CURRENT ASSETS | |
| a.    Cash on hand | $393.44 |
| b.    Accounts receivable | |
| c.    Inventories | |
| TOTAL CURRENT ASSETS | $393.44 |
| FIXED ASSETS | |
| a.    Office furniture & equipment | |
| b.    Machinery & equipment | |
| c.    Automobiles | |
| d.    Building & Land (Virgil Project) | $1,710,000.00 |
|       Building & Land (Moorepark Condominium) To Be Abandoned | |
| TOTAL FIXED ASSETS | $1,710,393.44 |
| OTHER ASSETS | |

| a.  Customer list | |
|---|---|
| b.  Other intangibles | |
| TOTAL OTHER ASSETS | $0.00 |
| TOTAL ASSETS AT LIQUIDATION VALUE | $1,710,393.44 |
| Less:<br>Secured creditor's recovery | $1,710,393.44 |
| Less:<br>Chapter 7 trustee fees and expenses at maximum allowed under Section 326(a) of the Bankruptcy Code | $84,378.17 |
| **Less:**<br>Chapter 11 administrative expenses | $100,325.00 |
| **Less:**<br>Priority claims, excluding administrative expense claims | $9,516.02 |
| **Less:**<br>Debtor's claimed exemptions<br>(1) Balance for unsecured claims | $0.00 |
| (2) Total amount of unsecured claims<br>The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims. | $3,579,507.51 |
| % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION[2]: = | 0 |
| % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN:        = | $\geq$5.00% |

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | **100** | **0** |
| Priority Tax Claims | **100** | **0** |
| Class 1. | **100** | **100** |
| Class 2. | **100 Secured Value** | **100 Secured Value** |
| Class 3. | **10%** | **0%** |
| Class 4. | **10%** | **0%** |

- 33 -

| | | |
|---|---|---|
| Class 5. | 10% | 0% |
| Class 6. | 10% | 0% |
| Class 7 | ≥5% | 0% |
| Class 8 | ≥5.0 | 0% |
| Class 9 | 100% of reduced amount | 0% |
| Class 10 | 0 | 0 |

C.    Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | $1,173,336.11 |
| **To Pay:** Administrative claims | ($168,729.37) |
| To Pay: Statutory costs & charges | $0.00 |
| **To Pay:** Other Plan Payments due on Effective Date | $0.00 |
| Balance after paying these amounts | $1,004,606.74 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $393.44 | Cash in DIP Account now |
| | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| $972,942.67 | Borrowing |
| +200,000.00 | New Value Capital Contributions |
| + | Other |
| $1,173,336.11 | Total |

1    Borrowing is from E & N Financial and will be paid back as follows:

2    As the units are sold the net proceeds from the sales will first be used to pay back the

3    percentage of the $972,972.67 loan shown on Exhibit "B". Also, monthly payments will be made to

4    the Class 2 creditor based on its $1,649,353.25 loan at 6% per annum, payable at interest only per

5    month which amounts to $8,246.77a month and to E & N Financial based on 7.5% per annum on a

6    monthly basis from the $1,000,000 loan being made to the Debtor which amounts to $6,250.00 a

7    month.

8    As each unit is sold the same percentage shown on Exhibit "B" will be used to pay the Class 2

9    claim and the remaining proceeds generated from each sale, after crediting the payments to the Classes

10    2 and claims of E & N Financial will be paid in accordance with the same percentages shown in

11    Exhibit "B" to pay the other creditor claims. There is a guarantee return to the undersecured portion of

12    secured creditors claims, other than those agreeing to accept a different treatment of no less than 5.0%

13    of the allowed amount of their claim.

14    The second aspect considers whether the Proponent will have enough cash over the life of the

15    Plan to make the required Plan payments.

16    The Proponent has provided financial statements which include both historical and projected

17    financial information. Please refer to Exhibit B for the relevant financial statements.

18    YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR

19    IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

20    In summary, the Plan proposes to pay net proceeds generated from the sale of each unit as each

21    unit closes escrow. As Debtor's financial projections demonstrate, Debtor will have sufficient revenue

22    generated from the sales to pay the entire balance of secured creditor claims and the surplus funds will

23    go to the unsecured portion of all creditor claims during the life of the Plan.  The final Plan payment is

24    expected to be paid on December 31, 2011.

25    The Plan Proponent contends that Debtor's financial projections are feasible.  Furthermore, as

26    discussed earlier in the Disclosure Statement at Section {II.E.4}, Debtor has implemented procedures

27    to minimize costs and complete the project, all for the benefit of all creditors and the estate.

28

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

**A.    Discharge**

This Plan provides that upon the effective date of the Plan, Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C.§1141.  However, the discharge will not discharge any liability imposed by the Plan.

**B.    Revesting of Property in the Debtor**

Except as provided in Section {V.E.}, and except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor.

**C.    Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.    Post-Confirmation Status Report**

Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

**E.    Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.    Post-Confirmation Conversion/Dismissal**

- 36 -

1        A creditor or party in interest may bring a motion to convert or dismiss the case under 11

2  U.S.C. §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court

3  orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been

4  property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in

5  the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the

6  extent that relief from stay was not previously authorized by the Court during this case.

7        The order confirming the Plan may also be revoked under very limited circumstances. The

8  Court may revoke the order if the order of confirmation was procured by fraud and if the party in

9  interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the

10  order of confirmation.

11  **G.    Final Decree**

12        Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan

13  Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a

14  motion with the Court to obtain a final decree to close the case.

15  Date: December 30, 2010             Joy Investment Group, LLC

16

17                        By:

18                           Ahron Zilberstein, Manager

19  Dated: December 30, 2010         William H. Brownstein & Associates,
                               Professional Corporation

20

21                        By:

22                           William H. Brownstein, Attorneys for

23                         Debtor and Debtor in Possession

24

25

26

27

28

## VI.

## SUPPORTING DECLARATIONS

<u>DECLARATION OF AHRON ZILBERSTEIN</u>

I, Ahron Zilberstein, do hereby declare and state as follows:

1.      I am the manager of the Debtor and I am the person who provided the information used in the preparation of the foregoing Disclosure Statement and Plan of Reorganization.

2.      The information contained therein is true and correct to the best of my knowledge, information and belief and it is based on the books and records maintained by the Debtor in the ordinary course of Debtor's business.

3.      The loan of $1,000,000 contemplated under the Plan was already funded by E & N Financial, with an escrow opened at Central Escrow. I am the president of E & N Financial and I was responsible for making the loan application and obtaining the loan approval from E & N Financial A copy of which attached to the Disclosure Statement as Exhibit B.

4.      The payment of the $1,000,000 is evidenced by cashier's checks placed into escrow, also attached to the Disclosure Statement as Exhibit B.

I declare that the foregoing is true and correct under the penalty of perjury and if called upon to testify thereon as a witness I would be competent to so testify.

Executed this 30th  day of December 2010 in Van Nuys, California.

_____
                Ahron Zilberstein

1

**EXHIBIT A - LIST OF ALL ASSETS**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

# Joseph D. Safran
(310) 925-8644

1546 SOUTH CANFIELD AVE
LOS ANGELES, CA 90035
joesafran@yahoo.com

## Professional Experience

### STAR CAPITAL REALTY, INC. Van Nuys, California

*Vice President/Responsible Broker*                                                 Nov. 05 – Present

- Responsible broker officer as of Jan 2006.
- Certified HAFA short sale specialist.
- Extensive nationwide short sale and note purchase experience with all major banks including Bank of America, Chase, Wells Fargo, IndyMac/OneWestBank, Citibank, US Bank, Central Mortgage, EastWest Bank, GMAC, Aurora, and First Bank.
- Expert in fair market valuations of Single Family, Condo, and Multi-Family residential units.
- Completed hundreds of Broker Price Opinions for lender requested market valuations.
- Provided lenders with expert knowledge and consulting for the marketing and sale of Single Family, Condos, Multi-Family and Commercial properties.

### EN FINANCIAL SERVICES, San Fernando Valley, California

*Financial Analyst & Marketing Associate*                                           Feb.02 – Nov. 05

- Assisted in the preparation of loan packages.
- Develop and maintain relationships with clients.
- Performed quality control
- Performed risk assessment on investments.

### BRADFORD & MARZEC LLC, Los Angeles, California

*Investment Associate*                                                              Jan. 01 – Feb 02

- Analyzed investment strategies with portfolio managers.
- Purchased & Sold bonds based on investment guidelines and objectives.
- Worked with new bond issues and existing bond issues to advise on new products to purchase.

## Education

### UNIVERSITY OF CALIFORNIA, LOS ANGELES

Bachelor of Arts in Business-Economics, Computing Specialization. 2001

*Independent Research*: Developing online asset valuation software implementing the CAPM and Black-Scholes Option Pricing Model by utilizing applied mathematical finance - discrete time stochastic methods.

## Specialized Skills and Languages

Expert knowledge of **Perl 3/4/5/6, PHP3/4/5, and VisualBasic6/.NET, C#.NET, MS SQL 6.5 - 2000, MySQL3/4.** Proficient knowledge of: **C/C++, Java2/J2EE, and the Bloomberg API.**
Expert knowledge of Windows XP/2000 Pro/Server/Advanced Server, UNIX/Linux systems.
Certified **Bloomberg** programmer.

Valuation for:

332 South Virgil Ave
Los Angeles, CA 90020



November 16, 2010

Joseph Safran

Star Capital Realty, Inc.

6360 Van Nuys Blvd Suite 200

Van Nuys, CA 91401

(818) 781 - 5006

EXHIBIT "A"
41

# Table of Contents

1. **Executive Summary**
2. **Property Description**
3. **Cash Flow Analysis**
4. **Comparables**
5. **Conclusion**

## Executive Summary

The purpose of this analysis is to evaluate an uncompleted 13 unit building in two ways.  The first is as 13 condominium units to be sold individually.  The second is to evaluate the property as a 13 unit apartment building, fully occupied with cash flows.  The building has a unit mix of 5x2+2, 5x3+2, and 3x3+3s.  Estimates to complete the construction with a unit by unit breakdown was provided by Shir Construction, an independent general contractor, dated 07/07/2010 and is attached as exhibit A.  The assumptions made in deriving the net proceeds in regards to the notes were as follows.  The holding costs are based on a 1st note and deed of trust of $2,500,000 at 6% interest, and a 2nd note and deed of trust for construction of $1,000,000 at 7.5% interest, both for 12 months.  The first approach of selling individual units arrived at a net proceeds $3,580,663 before paying off the first and second notes.  The approach valuing the property as an apartment building arrived at a net proceeds of $3,074,600 before paying off the first and second notes.

## Property Description

| | |
|---|---|
| APNs: | 5501-021-031, 033 - 045 |
| Address: | 332 South Virgil Ave, Los Angeles, CA 90020 |
| Year Built: | Under Construction |
| Number of Stories: | 5 |
| Units: | 13 |
| Unit Mix: | 5 x 2+2 |
| | 5 x 3+2 |
| | 3 x 3+3 |
| Total Usable Square Feet: | 20,096 |
| Total Parking: | 30 |



| 332 South Virgil Ave | | | | | | |
|---|---|---|---|---|---|---|
| Los Angeles, CA 90020 | | | | | | |
| Unit Tabulation | | | | | | |
| | | | | | | |
| **Unit Number** | | | **Type** | | | **Area - Sq Ft** |
| Unit 101 | | | 2+2 | | | 1,317 |
| Unit 102 | | | 3+2 | | | 1,300 |
| Unit 201 | | | 2+2 | | | 1,317 |
| Unit 202 | | | 3+2 | | | 1,300 |
| Unit 203 | | | 3+3 | | | 2,522 |
| Unit 301 | | | 2+2 | | | 1,317 |
| Unit 302 | | | 3+2 | | | 1,300 |
| Unit 303 | | | 3+3 | | | 1,567 |
| Unit 401 | | | 2+2 | | | 1,317 |
| Unit 402 | | | 3+2 | | | 1,300 |
| Unit 403 | | | 3+3 | | | 2,324 |
| Unit 501 | | | 2+2 | | | 1,317 |
| Unit 502 | | | 3+2 | | | 1,300 |
| Recreation Room | | | - | | | 598 |
| | | | | | | |
| Total Usable Square Feet | | | | | | 20,096 |

EXHIBIT "A"
46

332 South Virgil Ave
Los Angeles, CA 90020
Cost of Completion Breakdown As per Shir Construction report dated 07/07/2010

| | |
|---|---|
| Unit 101 | $ 55,510 |
| Unit 102 | $ 55,840 |
| Unit 201 | $ 55,510 |
| Unit 202 | $ 55,840 |
| Unit 203 | $ 78,260 |
| Unit 301 | $ 55,510 |
| Unit 302 | $ 55,840 |
| Unit 303 | $ 76,718 |
| Unit 401 | $ 55,510 |
| Unit 402 | $ 55,840 |
| Unit 403 | $ 78,260 |
| Unit 501 | $ 55,510 |
| Unit 502 | $ 55,840 |
| Total Cost of Completion | $ 789,988 |

332 South Virgil Ave

Los Angeles, CA 90020

Condo Brokers Price Opinion Based on Recent Comparable Sales as of 11/16/2010

| Subject Property Description | | | | | |
|---|---|---|---|---|---|
| Proeprty Style | Bed | Bath | Age | Sq Ft | Condition |
| Contemporary | 2 | 2 | 0 | 1,317 | New |
| Contemporary | 3 | 2 | 0 | 1,300 | New |
| Contemporary | 3 | 3 | 0 | 2,300-2,500 | New |
| Positive aspects of subject property | Brand new construction in high density market. | | | | |
| Negative aspects of subject property | Main street.  Adjacent to hospital with high traffic 24 hours a day.  Inconvenient parking configuration. | | | | |

| Comparable Sales Description - 2 Bedroom 2 Bath | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Address | Distance | BR/BA | Age | Sq. Ft | List Price | Sales Price | Sale Date | Days On Market |
| 1. 431 S Kingsley #204 | 1.2 mi | 2/2 | 27 | 1,199 | $269,000 | $261,000 | 6/8/2010 | 7 |
| 2.370 S COMMONWEALTH AVE #9 | 0.1 mi | 2/2 | 28 | 1,208 | $284,000 | $260,250 | 10/5/2010 | 77 |
| 3.500 S Berendo St #210 | 0.8 mi | 2/2 | 18 | 1,044 | $275,000 | $265,000 | 6/16/2010 | 17 |

Please compare properties to the subject, and note if the comparable is superior, inferior or equal

1. REO.  Property not upgraded. Subject property is superior as it is brand new with upgraded finishings.

2. Townhouse style unit.  Upgraded unit.  Subject property is superior as it is newer.

3. Short pay.  Property has city views.  Subject property is equal.

| Comparable Sales Description - 3 Bedroom 2 Bath | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Address | Distance | BR/BA | Age | Sq. Ft | List Price | Sales Price | Sale Date | Days On Market |
| 1.129 S Westmoreland Ave #104 | 0.5 mi | 3/3 | 7 | 1,390 | $299,000 | $302,000 | 10/19/2010 | 77 |
| 2. 456 Shatto  Pl #5 | 0.4 mi | 3/3 | 8 | 1,259 | $325,000 | $325,000 | 8/31/2010 | 174 |
| 3. 417 S WESTMORELAND AVE #304 | 2.4 mi | 3/2 | 3 | 1,380 | $331,500 | $339,999 | 10/15/2010 | 7 |

Please compare properties to the subject, and note if the comparable is superior, inferior or equal

1. Standard sale.  Property upgraded with high end finishings.  Subject property is equal.

2. Short Sale.  Contemporary style condo.  Subject property is equal.

3. REO.  Excellent location property has high end finishings.  Subject property is inferior.

EXHIBIT "A"

48

**Condo Brokers Price Opinion Based on Recent Comparable Sales - Page 2**

| Comparable Sales Description - 3 Bedroom 3 Bath | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Address | Distance | BR/BA | Age | Sq. Ft | List Price | Sales Price | Sale Date | Days On Market |
| 1. 332 South Kingsley Drive #303 | 1.0 mi | 3/3 | 19 | 1,745 | $424,000 | $420,000 | 8/16/2010 | 107 |
| 2. 333 S Manhattan Pl #4 | 1.5 mi | 3/3 | 3 | 1,494 | $439,000 | $412,000 | 9/24/2010 | 121 |
| 3. 456 Shatto Pl #5 | 0.4 mi | 3/3 | 8 | 1,259 | $325,000 | $325,000 | 8/31/2010 | 174 |

| Please compare properties to the subject, and note if the comparable is superior, inferior or equal |
|---|
| 1. Regular sale.  Remodeled and upgraded. Subject property is superior as it is brand new and larger. |
| 2.  Regular sale.  Remodeled and upgraded. Subject property is superior as it is brand new and larger. |
| 3. Short sale.  Property in fair condition.  Subject property is superior as it is brand new and significantly larger |

| Marketing Strategy | |
|---|---|
| Estimated Marketing Time | 150 days |
| Suggested List Price 2+2 | $285,000 |
| Estimated Sales Price | $265,000 |
| Who is most likely buyer for this asset? | First time home buyer |
| | |
| Suggested List Price 3+2 | $325,000 |
| Estimated Sales Price | $305,000 |
| Who is most likely buyer for this asset? | First time home buyer |
| | |
| Suggested List Price 3+3 | $450,000 |
| Estimated Sales Price | $435,000 |
| Who is most likely buyer for this asset? | First time home buyer |

332 South Virgil Ave
Los Angeles, CA 90020
Net Proceeds Available to First Note Upon Sale of 13 Condo Units

Assumptions:
1)      Time frame to complete construction of units is 5 months.
2)      Time frame to market and sell all units is 7 months.
3)      Interest Rate on 1st TD is 6% on $2,500,000 for 12 months
4)      Cost of Completion Breakdown As per Shir Construction report dated 07/07/2010

| Unit | Type | Sale Price | Selling Cost (8%) | Holding Cost 1st Note | Lndscp & Cleaning | Insurance | Utilities | Waste | Taxes | Adv | Proceeds Available to all Lenders | Cost to Complete Construction | Holding Costs - 2nd | Origination fees - 2nd Note | Construction Contingencies | Net Proceeds Available to 1st Note |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit 101 (model) | 2+2 | $ 265,000 | $ (21,200) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,313) | $ (1,538) | $ 225,872 | $ (55,510) | $ (5,270) | $ (1,405) | $ (8,082) | $ 155,605 |
| Unit 102 (model) | 3+2 | $ 305,000 | $ (24,400) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,813) | $ (1,538) | $ 262,172 | $ (55,840) | $ (5,301) | $ (1,414) | $ (8,130) | $ 191,487 |
| Unit 201 | 2+2 | $ 265,000 | $ (21,200) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,313) | $ (1,538) | $ 225,872 | $ (55,510) | $ (5,270) | $ (1,405) | $ (8,082) | $ 155,605 |
| Unit 202 | 3+2 | $ 305,000 | $ (24,400) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,813) | $ (1,538) | $ 262,172 | $ (55,840) | $ (5,301) | $ (1,414) | $ (8,130) | $ 191,487 |
| Unit 203 (model) | 3+3 | $ 435,000 | $ (34,800) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (5,438) | $ (1,538) | $ 380,147 | $ (78,260) | $ (7,430) | $ (1,981) | $ (11,394) | $ 281,082 |
| Unit 301 | 2+2 | $ 265,000 | $ (21,200) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,313) | $ (1,538) | $ 225,872 | $ (55,510) | $ (5,270) | $ (1,405) | $ (8,082) | $ 155,605 |
| Unit 302 | 3+2 | $ 305,000 | $ (24,400) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,813) | $ (1,538) | $ 262,172 | $ (55,840) | $ (5,301) | $ (1,414) | $ (8,130) | $ 191,487 |
| Unit 303 | 3+3 | $ 435,000 | $ (34,800) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (5,438) | $ (1,538) | $ 380,147 | $ (76,718) | $ (7,283) | $ (1,942) | $ (11,169) | $ 283,034 |
| Unit 401 | 2+2 | $ 265,000 | $ (21,200) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,313) | $ (1,538) | $ 225,872 | $ (55,510) | $ (5,270) | $ (1,405) | $ (8,082) | $ 155,605 |
| Unit 402 | 3+2 | $ 305,000 | $ (24,400) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,813) | $ (1,538) | $ 262,172 | $ (55,840) | $ (5,301) | $ (1,414) | $ (8,130) | $ 191,487 |
| Unit 403 | 3+3 | $ 435,000 | $ (34,800) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (5,438) | $ (1,538) | $ 380,147 | $ (78,260) | $ (7,430) | $ (1,981) | $ (11,394) | $ 281,082 |
| Unit 501 | 2+2 | $ 265,000 | $ (21,200) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,313) | $ (1,538) | $ 225,872 | $ (55,510) | $ (5,270) | $ (1,405) | $ (8,082) | $ 155,605 |
| Unit 502 | 3+2 | $ 305,000 | $ (24,400) | $ (11,538) | $ (185) | $ (615) | $ (600) | $ (138) | $ (3,813) | $ (1,538) | $ 262,172 | $ (55,840) | $ (5,301) | $ (1,414) | $ (8,130) | $ 191,487 |
| Totals | | | | | | | | | | | $ 3,580,663 | $ (789,988) | $ (75,000) | $ (20,000) | $ (115,012) | $ 2,580,663 |

EXHIBIT "A"
50

332 South Virgil Ave

Los Angeles, CA 90020

Net Proceeds Based on Individual Condo Sales

Assumptions:

1)       Time frame to complete, market and sell entire building is 12 months

2)       Interest Rate on 1st TD is 6% on $2,500,000 for 12 months

**Condo Sale Upon Completion Individually**

| | | |
|---|---:|---:|
| Gross Projected Proceeds from sale of 5 2+2s | $ 1,325,000 | |
| Gross Projected Proceeds from sale of 5 3+2s | $ 1,525,000 | |
| Gross Projected Proceeds from sale of 3 3+3s | $ 1,305,000 | |
| Gross Projected Proceeds from sale of all condos | | $ 4,155,000 |
| Less | | |
| Holding Cost  1st TD | $ 150,000 | |
| Landscaping & Cleaning | $ 2,400 | |
| Insurance | $ 8,000 | |
| Utilities | $ 7,800 | |
| Waste | $ 1,800 | |
| Taxes - based on value of $4,155,000 | $ 51,938 | |
| Advertising | $ 20,000 | |
| Selling Costs (8%) | $ 332,400 | |
| Sub Total | | $ (574,338) |
| Net Proceeds from Sale | | $ 3,580,663 |

The net proceeds need to be used as follows:

1.  Payoff of $1,000,000 construction loan - 2nd note and deed of trust.  The $1,000,000 includes $789,988 hard construction costs, $75,000 of interest, $20,000 origination fees, and $115,012 for construction contingencies.  A portion of the $1,000,000 may not be used to be repaid to the lender, and will be available as net proceeds to the owner.

2.  Payoff of the original 1st note and deed of trust.

  For example, if $1,000,000 is paid towards the 2nd note and deed of trust then $2,580,663 would be available towards the 1st note and deed of trust.

332 South Virgil Ave
Los Angeles, CA 90020
Rent Roll

| Unit Number | | | Type | | | Rental Amount |
|---|---|---|---|---|---|---|
| Unit 101 | | | 2+2 | | | $       1,433 |
| Unit 102 | | | 3+2 | | | $       2,150 |
| Unit 201 | | | 2+2 | | | $       1,433 |
| Unit 202 | | | 3+2 | | | $       2,150 |
| Unit 203 | | | 3+3 | | | $       2,633 |
| Unit 301 | | | 2+2 | | | $       1,433 |
| Unit 302 | | | 3+2 | | | $       2,150 |
| Unit 303 | | | 3+3 | | | $       2,633 |
| Unit 401 | | | 2+2 | | | $       1,433 |
| Unit 402 | | | 3+2 | | | $       2,150 |
| Unit 403 | | | 3+3 | | | $       2,633 |
| Unit 501 | | | 2+2 | | | $       1,433 |
| Unit 502 | | | 3+2 | | | $       2,150 |

Total Monthly Rent            $       25,814
Total Annual Rent             $     309,768

EXHIBIT "A"

**332 South Virgil Ave**
**Los Angeles, CA 90020**
**Annual Statement of Cashflows - Proforma**

| | | |
|---|---:|---:|
| Scheduled Gross Income | | $ 309,768 |
| Vacancy Reserve (8%) | | $ (24,781) |
| Gross Operating Income | | $ 284,987 |
| Less Expenses: | | |
|     Landscaping & Cleaning | $ 2,400 | |
|     Insurance | $ 8,000 | |
|     Repairs and Maintenance | $ 7,800 | |
|     Utilities | $ 15,600 | |
|     Waste | $ 1,800 | |
|     Taxes - based on value of $3,000,000 | $ 37,500 | |
|     Advertising | $ 2,400 | |
|     Management Fees (5%) | $ 15,488 | |
|     Pest Control | $ 1,200 | |
| Total Expenses | | $ (92,188) |
| Net Income | | $ 192,798 |

EXHIBIT "A"
53

332 South Virgil Ave
Los Angeles, CA 90020

| Sold Comparables | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Address | Year Built | Number of Units | Unit Mix | List Price | Sale Price | Sale Date | GRM | Cap Rate | Proximity |
| 441 North Virgil | 1986 | 12 | 2x1+1, 10x2+1 | $ 1,695,000 | $ 1,660,000 | Aug-10 | 9.28 | 7.29% | 0.7 mi |
| 558 North Alexandria | 1989 | 10 | 2x3+2, 8x2+2 | $ 1,600,000 | $ 1,540,000 | Sep-10 | 9.2 | 7.47% | 1.5 mi |
| 4100 West 1st Street | 1963 | 23 | 10x1+1 13x2+2 | $ 2,745,000 | $ 2,185,000 | Feb-10 | 14.28 | 7.00% | 1.3 mi |

| Marketing Strategy | |
|---|---|
| Estimated Marketing Time | 90 days |
| For the purposes of this valuation, even though the comparable listings show a higher cap rate, it is assumed that the cap rate for a new building is 5.50% | |
| Suggested List Price | $ 3,800,000 |
| Estimated Sale Price | $ 3,505,000 |

EXHIBIT "A"
54

332 South Virgil Ave
Los Angeles, CA 90020
Net Proceeds Based on Sale of 13 Unit Apartment Building

Assumptions:
1)    Time frame to complete, market and rent entire building is 12 months
2)    Interest Rate on 1st TD is 6% on $2,500,000 for 12 months

**Apartment Building Sale Upon Completion and Fully Occupied Approach**

| | | | |
|---|---|---|---|
| Probable Sale Price | | | $3,505,000 |
| Less | | | |
| Holding Cost  1st TD | $ | 150,000 | |
| Selling Costs (8%) | $ | 280,400 | |
| Sub Total | | | $    (430,400) |
| Net Proceeds from Sale | | | $   3,074,600 |

The net proceeds needs to be used as follows:

1.  Payoff of $1,000,000 construction loan - 2nd note and deed of trust.  The $1,000,000 includes $789,988 hard construction costs, $75,000 of interest, $20,000 origination fees, and $115,012 for construction contingencies.  A portion of the $1,000,000 may not be used to be repaid to the lender, and will be available as net proceeds to the owner.

2.  Payoff of the original 1st note and deed of trust.

   For example, if $1,000,000 is paid towards the 2nd note and deed of trust then $2,074,600 would be available towards the 1st note and deed of trust.

## Shriners Hospital For Children

Adjacent to subject property with 24 hour traffic affecting desirability of subject property.



## Comparable Rentals

| | |
|---|---|
|  | **315 South Virgil Rental Comp** |
|  | **3050 West 4th Rental Comp** |



| | |
|---|---|
| | **501 S. Berendo Rental Comp** |
| | **906 S. Serrano Rental Comp** |



**147 N Berendo
Rental Comp**



**440 S.Wilton
Rental Comp**



**5115 Wilshire Rental Comp**



**147 N Berendo Rental Comp**



**689 S Berendo Rental Comp**

| Property Address | Rent | Unit Mix | Sq. Feet | Year Built | Distance From Subject |
|---|---|---|---|---|---|
| 315 S. VIRGIL AVE. LOS ANGELES, CA 90020 | $1,400 | 2 Bed + 2 Baths | 838 | 1986 | 249 FT. |
| 3050 W. 4TH ST. LOS ANGELES, CA | $1,500 | 2 Bed + 2 Baths | 1070 | 1961 | 0.2 mi. |
| 501 S. BERENDO AVE. LOS ANGELES, CA  90020 | $1,450 | 2 Bed + 2 Baths | 897 | 1991 | 0.8 mi. |
| 906 S. SERRANO AVE # 401, LOS ANGELES, CA 90006 | $2,200 | 3 Bed + 2 Baths | 1140 | 2005 | 2.0 mi. |
| 147 BERENDO ST # 102, LOS ANGELES, CA 90004 | $2,500 | 3 Bed + 2 Baths | 1452 | 2010 | 0.7 mi. |
| 440 S. WILTON PL. #104 LOS ANGELES, CA 90020 | $1,650 | 3 Bed + 2 Baths | 1380 | 1956 | 2.0 mi. |
| 5115 WILSHIRE BLVD, LOS ANGELES, CA 90036 | $2,700 | 3 Bed + 3 Baths | 1708 | 2007 | 3.5 mi. |
| 147 BERENDO ST # 202, LOS ANGELES, CA 90004 | $2,600 | 3 Bed + 3 Baths | 1544 | 2010 | 0.7 mi. |
| 689 S. BERENDO ST. LOS ANGELES, CA 90005 | $2,600 | 3 Bed +3 Baths | 1568 | 2005 | 0.9 mi. |

EXHIBIT "A"
62

## Comparable Sales



**431 Kingsley
2+2
Sold Comp**



**370 S.
Commonwealth
2+2
Sold Comp**



**500 S. Berendo
2+2
Sold Comp**



**129 S. Westmoreland 3+3 Sold Comp**



**456 Shatto
3+3
Sold Comp**



**417 S.
Westmoreland
3+2
Sold Comp**



**332 S. Kingsley
Dr. #303**

**3 + 3
Sold Comp**

| | |
|---|---|
|  | **333 S. Manhattan Pl. #4**<br><br>**3 + 3**<br>**Sold Comp** |
|  | **456 Shatto Pl #5**<br><br>**3 + 3**<br>**Sold Comp** |

**Conclusion**

In conclusion, the property was valued using two approaches to determine the net proceeds available to the lenders from an eventual sale.  The approach assuming the sale of individual units yielded a net proceeds of $3,580,663 available to lenders.  The approach assuming the sale of the property as an apartment building yielded a net proceeds of $3,074,600 available to lenders.

Exhibit A


Shir Construction Cost Estimate – Unit Breakdown

# SHIR CONSTRUCTION

17434 Bullock St. Encino, CA 91316
Home # (818) 996-3567 Cell phone # (818) 266-4448 License #461004

---

# CONSTRUCTION COST ESTIMATE

For:

332 S. Virgil Ave.
Los Ángeles, Ca 90020

# SHIR CONSTRUCTION

17434 Bullock St. Encino, CA 91316
Home # (818) 996-3567  Cell phone # (818) 266-4448 License #461004

July 2, 2010

TO:  Jay Development LLC

Property Address:    332 S. Virgil Ave.
                     Los Angeles, CA 90020

Dear Ahron;

Thank you for selecting us to prepare construction estimates for the 13 Unit Apartment/Condominium building, located at 332 S. Virgil Ave.  I have read and reviewed all the building records that were available to me from the City of Los Angeles Department of Building and Safety, Records Division, and the Code Observation Reported prepared by Marc Stibelman, dated July 16, 2009. After reviewing the reports, I went to the site and did my own observation. Enclosed you will find an estimate for construction which includes completing and getting the final inspections for the 6 story Condominium Building. The estimated time frame to complete the work and have the building approved by the City of Los Angeles Building Inspector to have the Certificate of Occupancy issued is less than 150 days.

These estimates may change once I meet with all the inspectors and find out all the specific details. Please review it and if you have any questions or concerns please contact me for any clarifications.

Thank You Again;

_____
**Efraim Klainman**

EXHIBIT "A"
72

# SHIR CONSTRUCTION

17434 Bullock St. Encino, CA 91316
Home # (818) 996-3567  Cell phone # (818) 266-4448 License #461004

July 7, 2010

Joy Investment L.L.C.

Re: 332 S. Virgil Ave..

Dear Ahron;

I am writing to you to conclude my investigation to your **Thirteen Unit, Five Story Apartment/Condominium building.**  After meeting with the City of Los Angeles Building Inspector, Mechanical Inspector, Electrical Inspector, and Elevator Inspector, I found out the building is ready for final inspection. There are just a few remaining items/corrections that need to be addressed and they are very minor and easy to have approved.

 Furthermore, as for the permits that are expired, they too are very simple to renew. All you have to do is meet with the inspectors individually and have them sign a correction notice stating what percentage of the building is complete. They most likely will call it 90% complete, which means that building is ready for final inspections. Then you just need to take the correction notices to any City of Los Angeles District Office to the express permit counter. There the clerk will prepare a supplemental permit to for each permit which needs to be renewed. They will only charge you a fee based on the remaining percentage from the original permit project cost construction evaluation or cost of construction. For example, if the inspection writes the project at 90% complete, then the fee will be 10% of the original permit project cost evaluation.

I hope this helps you to complete your project and I look forward to expediting this final inspection process for you to help you finish this building as soon as possible.

Sincerely Yours;

 

 

_____
**Efraim Klainman**

Client:      Joy Investment                                      Home:    (818) 335-6879

Property:    332 S. Virgil Ave.
             Los Angeles, CA 90020

Operator Info:
   Operator:      MARC

   Estimator:     Billy

Type of Estimate:   Other
   Date Entered:        7/2/2010          Date Assigned:    7/2/2010
Date Est. Completed:   11/11/2010         Date Job Completed:


Price List:      TRAINING
                 Restoration/Service/Remodel
   Estimate:     332VIRGIL101

EXHIBIT "A"
74

**332VIRGIL101**

**Unit 101 - 2 Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Corridor 1 Hr. fire rated door - solid alder - paneled | 1.00 EA @ | 1,061.44 = | 1,061.44 |
| R&R Bypass mirrored door set - High grade | 2.00 EA @ | 357.91 = | 715.82 |
| R&R Interior door unit - Premium grade | 5.00 EA @ | 308.88 = | 1,544.40 |
| R&R Bifold door - full louvered - Single | 3.00 EA @ | 110.48 = | 331.44 |
| R&R Door lockset & deadbolt - exterior - Deluxe grade | 1.00 EA @ | 191.30 = | 191.30 |
| Finish Hardware Installer - per hour | 8.00 HR @ | 45.18 = | 361.44 |
| R&R Door knob - interior - High grade | 5.00 EA @ | 47.44 = | 237.20 |
| Carpenter - Finish, Trim / Cabinet - per hour | 40.00 HR @ | 86.71 = | 3,468.40 |
| Cabinetry - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Closet shelf and rod package | 26.00 LF @ | 69.82 = | 1,815.32 |
| R&R Custom cabinets - vanity units - High grade | 8.00 LF @ | 293.60 = | 2,348.80 |
| R&R Custom cabinets - wall units - 30" tall - High grade | 10.00 LF @ | 221.81 = | 2,218.10 |
| R&R Custom cabinets - wall units - up to 24" tall - High grade | 10.00 LF @ | 207.68 = | 2,076.80 |
| R&R Bypass glass shower door set | 2.00 EA @ | 334.41 = | 668.82 |
| R&R Cooktop  w/ oven- gas - Premium grade | 1.00 EA @ | 809.95 = | 809.95 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Dishwasher - Premium grade | 1.00 EA @ | 549.93 = | 549.93 |
| R&R Garbage disposer - High grade | 1.00 EA @ | 176.11 = | 176.11 |
| R&R Microwave oven - over range w/built-in hood | 1.00 EA @ | 344.95 = | 344.95 |
| R&R Refrigerator - side by side - 25 to 30 cf - High grade | 1.00 EA @ | 2,466.66 = | 2,466.66 |
| R&R Washer - Front-loading | 1.00 EA @ | 966.43 = | 966.43 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Window blind - horizontal or vertical - Large | 3.00 EA @ | 117.21 = | 351.63 |
| R&R Sink faucet - Kitchen - High grade | 1.00 EA @ | 184.57 = | 184.57 |
| R&R Sink faucet - Bathroom - High grade | 2.00 EA @ | 143.73 = | 287.46 |
| Plumber - per hour | 40.00 HR @ | 84.15 = | 3,366.00 |
| Plumber - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Sink - single - High grade | 2.00 EA @ | 278.12 = | 556.24 |
| R&R Kitchen Sink - double - High grade | 1.00 EA @ | 330.38 = | 330.38 |
| R&R Toilet - High grade | 2.00 EA @ | 387.30 = | 774.60 |
| R&R Toilet seat - High grade | 2.00 EA @ | 55.83 = | 111.66 |
| R&R Tub/shower faucet - High grade | 2.00 EA @ | 219.20 = | 438.40 |
| R&R Slit system  Ac condensor w/ Heat Pump electric - 4500 cfm | 1.00 EA @ | 1,666.71 = | 1,666.71 |
| R&R Thermostat - Premium grade (programmable) | 1.00 EA @ | 217.98 = | 217.98 |
| Painter #1 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter #2 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter # 3 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter Contractor #4 - per hour | 40.00 HR @ | 89.47 = | 3,578.80 |
| Taxes, insurance, renewing permits & fees (Bid item) | 1.00 EA @ | 5,500.00 = | 5,500.00 |

EXHIBIT "A"

75

**CONTINUED - Unit 101 - 2 Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Central air conditioning system - 3 ton - 14-15 SEER | 1.00 EA @ | 2,164.63 = | 2,164.63 |
| R&R Heat/AC register | 11.00 EA @ | 17.84 = | 196.24 |

| Adjustments for Base Service Charges | | | | | | Adjustment |
|---|---|---|---|---|---|---|
| Carpenter - Finish, Trim/Cabinet | | | | | | 93.42 |
| | Coverage | Dwelling | @ | 100.00 % = | 93.42 | |
| Electrician | | | | | | 106.78 |
| | Coverage | Dwelling | @ | 100.00 % = | 106.78 | |
| Hardware Installer | | | | | | 90.36 |
| | Coverage | Dwelling | @ | 100.00 % = | 90.36 | |
| Heating / A.C. Mechanic | | | | | | 115.32 |
| | Coverage | Dwelling | @ | 100.00 % = | 115.32 | |
| General Laborer | | | | | | 25.90 |
| | Coverage | Dwelling | @ | 100.00 % = | 25.90 | |
| Plumber | | | | | | 108.30 |
| | Coverage | Dwelling | @ | 100.00 % = | 108.30 | |
| Total Adjustments for Base Service Charges: | | | | | | 540.08 |

**Line Item Totals: 332VIRGIL101**                                                    **53,556.31**

EXHIBIT "A"
76

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| | | | | | |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 0.00 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

| Coverage | Amount | % | Grand Total | % |
|---|---|---|---|---|
| Dwelling | 53,016.23 | 100.00% | 55,510.38 | 100.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 53,016.23 | 100.00% | 55,510.38 | 100.00% |

EXHIBIT "A"
77

## Summary for Dwelling

| | | | |
|---|---|---|---:|
| Line Item Total | | | 53,016.23 |
| Total Adjustments for Base Service Charges | | | 540.08 |
| Material Sales Tax | @      9.250%  x | 21,125.05 | 1,954.07 |
| **Replacement Cost Value** | | | **$55,510.38** |
| **Net Claim** | | | **$55,510.38** |

Billy

EXHIBIT "A"
78

## Recap by Room

**Estimate: 332VIRGIL101**

| | | | | |
|---|---|---|---|---|
| **Unit 101 - 2 Bedroom** | | | **53,016.23** | **98.99%** |
| Coverage: Dwelling | 100.00% | = | 53,016.23 | |
| | | | | |
| **Subtotal of Areas** | | | **53,016.23** | **98.99%** |
| Coverage: Dwelling | 100.00% | = | 53,016.23 | |
| **Base Service Charges** | | | **540.08** | **1.01%** |
| | | | | |
| **Total** | | | **53,556.31** | **100.00%** |

EXHIBIT "A"
79

## Recap by Category

| O&P Items | | | Total Dollars | % |
|---|---|---|---|---|
| **APPLIANCES** | | | **6,920.45** | **12.47%** |
| Coverage: Dwelling | @ | 100.00% = | 6,920.45 | |
| **CABINETRY** | | | **11,026.58** | **19.86%** |
| Coverage: Dwelling | @ | 100.00% = | 11,026.58 | |
| **GENERAL DEMOLITION** | | | **753.31** | **1.36%** |
| Coverage: Dwelling | @ | 100.00% = | 753.31 | |
| **DOORS** | | | **4,198.83** | **7.56%** |
| Coverage: Dwelling | @ | 100.00% = | 4,198.83 | |
| **PERMITS AND FEES** | | | **5,500.00** | **9.91%** |
| Coverage: Dwelling | @ | 100.00% = | 5,500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **1,739.92** | **3.13%** |
| Coverage: Dwelling | @ | 100.00% = | 1,739.92 | |
| **FINISH HARDWARE** | | | **745.06** | **1.34%** |
| Coverage: Dwelling | @ | 100.00% = | 745.06 | |
| **HEAT,  VENT & AIR CONDITIONING** | | | **4,129.01** | **7.44%** |
| Coverage: Dwelling | @ | 100.00% = | 4,129.01 | |
| **LABOR ONLY** | | | **10,715.20** | **19.30%** |
| Coverage: Dwelling | @ | 100.00% = | 10,715.20 | |
| **PLUMBING** | | | **6,953.73** | **12.53%** |
| Coverage: Dwelling | @ | 100.00% = | 6,953.73 | |
| **WINDOW TREATMENT** | | | **334.14** | **0.60%** |
| Coverage: Dwelling | @ | 100.00% = | 334.14 | |
| **Subtotal** | | | **53,016.23** | **95.51%** |
| Base Service Charges | | | 540.08 | 0.97% |
| Material Sales Tax | @ | 9.250% | 1,954.07 | 3.52% |
| **O&P Items Subtotal** | | | **55,510.38** | **100.00%** |

EXHIBIT "A"
80

Client:       Joy Investment                                      Home:    (818) 335-6879

Property:     332 S. Virgil Ave.
              Los Angeles, CA 90020

Operator Info:
    Operator:     MARC

    Estimator:    Billy

Type of Estimate:     Other
    Date Entered:      7/2/2010          Date Assigned:    7/2/2010
Date Est. Completed:  11/11/2010        Date Job Completed:


Price List:     TRAINING
                Restoration/Service/Remodel
    Estimate:    332VIRGIL102

**332VIRGIL102**

**Unit 102 -3 Bedroom**

| DESCRIPTION | QNTY | UNIT COST = | TOTAL |
|---|---|---|---|
| R&R Corridor 1 Hr. fire rated door - solid alder - paneled | 1.00 EA @ | 1,061.44 = | 1,061.44 |
| R&R Bypass mirrored door set - High grade | 2.00 EA @ | 357.91 = | 715.82 |
| R&R Interior door unit - Premium grade | 6.00 EA @ | 308.88 = | 1,853.28 |
| R&R Bifold door - full louvered - Single | 1.00 EA @ | 110.48 = | 110.48 |
| R&R Door lockset & deadbolt - exterior - Deluxe grade | 1.00 EA @ | 191.30 = | 191.30 |
| R&R Door knob - interior - High grade | 6.00 EA @ | 47.44 = | 284.64 |
| Finish Hardware Installer - per hour | 8.00 HR @ | 45.18 = | 361.44 |
| Carpenter - Finish, Trim / Cabinet - per hour | 40.00 HR @ | 86.71 = | 3,468.40 |
| Cabinetry - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Closet shelf and rod package | 25.00 LF @ | 69.82 = | 1,745.50 |
| R&R Custom cabinets - vanity units - High grade | 8.00 LF @ | 293.60 = | 2,348.80 |
| R&R Custom cabinets - wall units - 30" tall - High grade | 10.00 LF @ | 221.81 = | 2,218.10 |
| R&R Custom cabinets - wall units - up to 24" tall - High grade | 10.00 LF @ | 207.68 = | 2,076.80 |
| R&R Bypass glass shower door set | 2.00 EA @ | 334.41 = | 668.82 |
| R&R Cooktop  w/ oven- gas - Premium grade | 1.00 EA @ | 809.95 = | 809.95 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Dishwasher - Premium grade | 1.00 EA @ | 549.93 = | 549.93 |
| R&R Garbage disposer - High grade | 1.00 EA @ | 176.11 = | 176.11 |
| R&R Microwave oven - over range w/built-in hood | 1.00 EA @ | 344.95 = | 344.95 |
| R&R Refrigerator - side by side - 25 to 30 cf - High grade | 1.00 EA @ | 2,466.66 = | 2,466.66 |
| R&R Washer - Front-loading | 1.00 EA @ | 966.43 = | 966.43 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Window blind - horizontal or vertical - Large | 5.00 EA @ | 117.21 = | 586.05 |
| R&R Sink faucet - Kitchen - High grade | 1.00 EA @ | 184.57 = | 184.57 |
| R&R Sink faucet - Bathroom - High grade | 2.00 EA @ | 143.73 = | 287.46 |
| Plumber - per hour | 40.00 HR @ | 84.15 = | 3,366.00 |
| Plumber - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Sink - single - High grade | 2.00 EA @ | 278.12 = | 556.24 |
| R&R Kitchen Sink - double - High grade | 1.00 EA @ | 330.38 = | 330.38 |
| R&R Toilet - High grade | 2.00 EA @ | 387.30 = | 774.60 |
| R&R Toilet seat - High grade | 2.00 EA @ | 55.83 = | 111.66 |
| R&R Tub/shower faucet - High grade | 2.00 EA @ | 219.20 = | 438.40 |
| R&R Slit system  Ac condensor w/ Heat Pump electric - 4500 cfm | 1.00 EA @ | 1,666.71 = | 1,666.71 |
| R&R Thermostat - Premium grade (programmable) | 1.00 EA @ | 217.98 = | 217.98 |
| Painter #1 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter #2 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter # 3 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter Contractor #4 - per hour | 40.00 HR @ | 89.47 = | 3,578.80 |
| Taxes, insurance, renewing permits & fees (Bid item) | 1.00 EA @ | 5,500.00 = | 5,500.00 |

EXHIBIT "A"
82

**CONTINUED - Unit 102 -3 Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Central air conditioning system - 3 ton - 14-15 SEER | 1.00 EA @ | 2,164.63 = | 2,164.63 |
| R&R Heat/AC register | 11.00 EA @ | 17.84 = | 196.24 |

| Adjustments for Base Service Charges | | | | | | Adjustment |
|---|---|---|---|---|---|---|
| Carpenter - Finish, Trim/Cabinet | | | | | | 93.42 |
| | Coverage | Dwelling | @ | 100.00 % = | 93.42 | |
| Electrician | | | | | | 106.78 |
| | Coverage | Dwelling | @ | 100.00 % = | 106.78 | |
| Hardware Installer | | | | | | 90.36 |
| | Coverage | Dwelling | @ | 100.00 % = | 90.36 | |
| Heating / A.C. Mechanic | | | | | | 115.32 |
| | Coverage | Dwelling | @ | 100.00 % = | 115.32 | |
| General Laborer | | | | | | 25.90 |
| | Coverage | Dwelling | @ | 100.00 % = | 25.90 | |
| Plumber | | | | | | 108.30 |
| | Coverage | Dwelling | @ | 100.00 % = | 108.30 | |

| Total Adjustments for Base Service Charges: | 540.08 |
|---|---|
| **Line Item Totals: 332VIRGIL102** | **53,856.27** |

EXHIBIT "A"
83

**Grand Total Areas:**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls and Ceiling |
| 0.00 SF Floor | 0.00 SY Flooring | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | 0.00 SF Short Wall | 0.00 LF Ceil. Perimeter |
| | | |
| 0.00 Floor Area | 0.00 Total Area | 0.00 Interior Wall Area |
| 0.00 Exterior Wall Area | 0.00 Exterior Perimeter of Walls | |
| | | |
| 0.00 Surface Area | 0.00 Number of Squares | 0.00 Total Perimeter Length |
| 0.00 Total Ridge Length | 0.00 Total Hip Length | |

| Coverage | Amount | % | Grand Total | % |
|---|---|---|---|---|
| Dwelling | 53,316.19 | 100.00% | 55,840.20 | 100.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 53,316.19 | 100.00% | 55,840.20 | 100.00% |

EXHIBIT "A"
84

### Summary for Dwelling

| | | | | |
|---|---|---|---|---|
| Line Item Total | | | | 53,316.19 |
| Total Adjustments for Base Service Charges | | | | 540.08 |
| Material Sales Tax | @ | 9.250%  x | 21,447.89 | 1,983.93 |

| | |
|---|---|
| **Replacement Cost Value** | **$55,840.20** |
| **Net Claim** | **$55,840.20** |

Billy

EXHIBIT "A"
85

## Recap by Room

**Estimate: 332VIRGIL102**

|  |  |  |  |
|---|---|---|---|
| **Unit 102 -3 Bedroom** | | **53,316.19** | **99.00%** |
| Coverage: Dwelling | 100.00% = | 53,316.19 | |
| **Subtotal of Areas** | | **53,316.19** | **99.00%** |
| Coverage: Dwelling | 100.00% = | 53,316.19 | |
| **Base Service Charges** | | **540.08** | **1.00%** |
| **Total** | | **53,856.27** | **100.00%** |

EXHIBIT "A"
86

## Recap by Category

| O&P Items | | | Total Dollars | % |
|---|---|---|---|---|
| **APPLIANCES** | | | **6,920.45** | **12.39%** |
| Coverage: Dwelling | @ | 100.00% = | 6,920.45 | |
| **CABINETRY** | | | **11,026.58** | **19.75%** |
| Coverage: Dwelling | @ | 100.00% = | 11,026.58 | |
| **GENERAL DEMOLITION** | | | **765.68** | **1.37%** |
| Coverage: Dwelling | @ | 100.00% = | 765.68 | |
| **DOORS** | | | **4,290.38** | **7.68%** |
| Coverage: Dwelling | @ | 100.00% = | 4,290.38 | |
| **PERMITS AND FEES** | | | **5,500.00** | **9.85%** |
| Coverage: Dwelling | @ | 100.00% = | 5,500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **1,673.00** | **3.00%** |
| Coverage: Dwelling | @ | 100.00% = | 1,673.00 | |
| **FINISH HARDWARE** | | | **785.26** | **1.41%** |
| Coverage: Dwelling | @ | 100.00% = | 785.26 | |
| **HEAT, VENT & AIR CONDITIONING** | | | **4,129.01** | **7.39%** |
| Coverage: Dwelling | @ | 100.00% = | 4,129.01 | |
| **LABOR ONLY** | | | **10,715.20** | **19.19%** |
| Coverage: Dwelling | @ | 100.00% = | 10,715.20 | |
| **PLUMBING** | | | **6,953.73** | **12.45%** |
| Coverage: Dwelling | @ | 100.00% = | 6,953.73 | |
| **WINDOW TREATMENT** | | | **556.90** | **1.00%** |
| Coverage: Dwelling | @ | 100.00% = | 556.90 | |
| **Subtotal** | | | **53,316.19** | **95.48%** |
| Base Service Charges | | | 540.08 | 0.97% |
| Material Sales Tax | @ | 9.250% | 1,983.93 | 3.55% |
| **O&P Items Subtotal** | | | **55,840.20** | **100.00%** |

EXHIBIT "A"
87

Client:     Joy Investment                                    Home:     (818) 335-6879

Property:   332 S. Virgil Ave.
            Los Angeles, CA 90020

Operator Info:
    Operator:   MARC

    Estimator:  Billy

Type of Estimate:   Other
    Date Entered:       7/2/2010          Date Assigned:    7/2/2010
Date Est. Completed:    11/11/2010        Date Job Completed:


Price List:     TRAINING
                Restoration/Service/Remodel
    Estimate:   332VIRGIL201

332VIRGIL201

**Unit 201 -2  Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Corridor 1 Hr. fire rated door - solid alder - paneled | 1.00 EA @ | 1,061.44 = | 1,061.44 |
| R&R Bypass mirrored door set - High grade | 2.00 EA @ | 357.91 = | 715.82 |
| R&R Interior door unit - Premium grade | 5.00 EA @ | 308.88 = | 1,544.40 |
| R&R Bifold door - full louvered - Single | 3.00 EA @ | 110.48 = | 331.44 |
| R&R Door lockset & deadbolt - exterior - Deluxe grade | 1.00 EA @ | 191.30 = | 191.30 |
| Finish Hardware Installer - per hour | 8.00 HR @ | 45.18 = | 361.44 |
| R&R Door knob - interior - High grade | 5.00 EA @ | 47.44 = | 237.20 |
| Carpenter - Finish, Trim / Cabinet - per hour | 40.00 HR @ | 86.71 = | 3,468.40 |
| Cabinetry - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Closet shelf and rod package | 26.00 LF @ | 69.82 = | 1,815.32 |
| R&R Custom cabinets - vanity units - High grade | 8.00 LF @ | 293.60 = | 2,348.80 |
| R&R Custom cabinets - wall units - 30" tall - High grade | 10.00 LF @ | 221.81 = | 2,218.10 |
| R&R Custom cabinets - wall units - up to 24" tall - High grade | 10.00 LF @ | 207.68 = | 2,076.80 |
| R&R Bypass glass shower door set | 2.00 EA @ | 334.41 = | 668.82 |
| R&R Cooktop  w/ oven- gas - Premium grade | 1.00 EA @ | 809.95 = | 809.95 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Dishwasher - Premium grade | 1.00 EA @ | 549.93 = | 549.93 |
| R&R Garbage disposer - High grade | 1.00 EA @ | 176.11 = | 176.11 |
| R&R Microwave oven - over range w/built-in hood | 1.00 EA @ | 344.95 = | 344.95 |
| R&R Refrigerator - side by side - 25 to 30 cf - High grade | 1.00 EA @ | 2,466.66 = | 2,466.66 |
| R&R Washer - Front-loading | 1.00 EA @ | 966.43 = | 966.43 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Window blind - horizontal or vertical - Large | 3.00 EA @ | 117.21 = | 351.63 |
| R&R Sink faucet - Kitchen - High grade | 1.00 EA @ | 184.57 = | 184.57 |
| R&R Sink faucet - Bathroom - High grade | 2.00 EA @ | 143.73 = | 287.46 |
| Plumber - per hour | 40.00 HR @ | 84.15 = | 3,366.00 |
| Plumber - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Sink - single - High grade | 2.00 EA @ | 278.12 = | 556.24 |
| R&R Kitchen Sink - double - High grade | 1.00 EA @ | 330.38 = | 330.38 |
| R&R Toilet - High grade | 2.00 EA @ | 387.30 = | 774.60 |
| R&R Toilet seat - High grade | 2.00 EA @ | 55.83 = | 111.66 |
| R&R Tub/shower faucet - High grade | 2.00 EA @ | 219.20 = | 438.40 |
| R&R Slit system  Ac condensor w/ Heat Pump electric - 4500 cfm | 1.00 EA @ | 1,666.71 = | 1,666.71 |
| R&R Thermostat - Premium grade (programmable) | 1.00 EA @ | 217.98 = | 217.98 |
| Painter #1 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter #2 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter # 3 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter Contractor #4 - per hour | 40.00 HR @ | 89.47 = | 3,578.80 |
| Taxes, insurance, renewing permits & fees (Bid item) | 1.00 EA @ | 5,500.00 = | 5,500.00 |

EXHIBIT "A"
89

**CONTINUED - Unit 201 -2  Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Central air conditioning system - 3 ton - 14-15 SEER | 1.00 EA @ | 2,164.63 = | 2,164.63 |
| R&R Heat/AC register | 11.00 EA @ | 17.84 = | 196.24 |

| Adjustments for Base Service Charges | | | | | | Adjustment |
|---|---|---|---|---|---|---|
| Carpenter - Finish, Trim/Cabinet | | | | | | 93.42 |
| | Coverage | Dwelling | @ | 100.00 % = | 93.42 | |
| Electrician | | | | | | 106.78 |
| | Coverage | Dwelling | @ | 100.00 % = | 106.78 | |
| Hardware Installer | | | | | | 90.36 |
| | Coverage | Dwelling | @ | 100.00 % = | 90.36 | |
| Heating / A.C. Mechanic | | | | | | 115.32 |
| | Coverage | Dwelling | @ | 100.00 % = | 115.32 | |
| General Laborer | | | | | | 25.90 |
| | Coverage | Dwelling | @ | 100.00 % = | 25.90 | |
| Plumber | | | | | | 108.30 |
| | Coverage | Dwelling | @ | 100.00 % = | 108.30 | |
| Total Adjustments for Base Service Charges: | | | | | | 540.08 |

**Line Item Totals: 332VIRGIL201**                                                **53,556.31**

EXHIBIT "A"
90

**Grand Total Areas:**

| | | |
|---|---|---|
| 0.00  SF Walls | 0.00  SF Ceiling | 0.00  SF Walls and Ceiling |
| 0.00  SF Floor | 0.00  SY Flooring | 0.00  LF Floor Perimeter |
| 0.00  SF Long Wall | 0.00  SF Short Wall | 0.00  LF Ceil. Perimeter |
| | | |
| 0.00  Floor Area | 0.00  Total Area | 0.00  Interior Wall Area |
| 0.00  Exterior Wall Area | 0.00  Exterior Perimeter of Walls | |
| | | |
| 0.00  Surface Area | 0.00  Number of Squares | 0.00  Total Perimeter Length |
| 0.00  Total Ridge Length | 0.00  Total Hip Length | |

| Coverage | Amount | % | Grand Total | % |
|---|---|---|---|---|
| Dwelling | 53,016.23 | 100.00% | 55,510.38 | 100.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 53,016.23 | 100.00% | 55,510.38 | 100.00% |

EXHIBIT "A"
91

### Summary for Dwelling

| | | | | |
|---|---|---|---|---|
| Line Item Total | | | | 53,016.23 |
| Total Adjustments for Base Service Charges | | | | 540.08 |
| Material Sales Tax | @ | 9.250% x | 21,125.05 | 1,954.07 |

| | |
|---|---|
| **Replacement Cost Value** | **$55,510.38** |
| **Net Claim** | **$55,510.38** |

Billy

EXHIBIT "A"
92

## Recap by Room

**Estimate: 332VIRGIL201**

| | | | |
|---|---|---|---|
| **Unit 201 -2  Bedroom** | | **53,016.23** | **98.99%** |
| Coverage: Dwelling | 100.00% = | 53,016.23 | |
| **Subtotal of Areas** | | **53,016.23** | **98.99%** |
| Coverage: Dwelling | 100.00% = | 53,016.23 | |
| **Base Service Charges** | | **540.08** | **1.01%** |
| **Total** | | **53,556.31** | **100.00%** |

332VIRGIL201                                                          11/11/2010          Page: 6

## Recap by Category

| O&P Items | | | Total Dollars | % |
|---|---|---|---:|---:|
| **APPLIANCES** | | | **6,920.45** | **12.47%** |
| Coverage: Dwelling | @ | 100.00% = | 6,920.45 | |
| **CABINETRY** | | | **11,026.58** | **19.86%** |
| Coverage: Dwelling | @ | 100.00% = | 11,026.58 | |
| **GENERAL DEMOLITION** | | | **753.31** | **1.36%** |
| Coverage: Dwelling | @ | 100.00% = | 753.31 | |
| **DOORS** | | | **4,198.83** | **7.56%** |
| Coverage: Dwelling | @ | 100.00% = | 4,198.83 | |
| **PERMITS AND FEES** | | | **5,500.00** | **9.91%** |
| Coverage: Dwelling | @ | 100.00% = | 5,500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **1,739.92** | **3.13%** |
| Coverage: Dwelling | @ | 100.00% = | 1,739.92 | |
| **FINISH HARDWARE** | | | **745.06** | **1.34%** |
| Coverage: Dwelling | @ | 100.00% = | 745.06 | |
| **HEAT, VENT & AIR CONDITIONING** | | | **4,129.01** | **7.44%** |
| Coverage: Dwelling | @ | 100.00% = | 4,129.01 | |
| **LABOR ONLY** | | | **10,715.20** | **19.30%** |
| Coverage: Dwelling | @ | 100.00% = | 10,715.20 | |
| **PLUMBING** | | | **6,953.73** | **12.53%** |
| Coverage: Dwelling | @ | 100.00% = | 6,953.73 | |
| **WINDOW TREATMENT** | | | **334.14** | **0.60%** |
| Coverage: Dwelling | @ | 100.00% = | 334.14 | |
| **Subtotal** | | | **53,016.23** | **95.51%** |
| Base Service Charges | | | 540.08 | 0.97% |
| Material Sales Tax | @ | 9.250% | 1,954.07 | 3.52% |
| **O&P Items Subtotal** | | | **55,510.38** | **100.00%** |

EXHIBIT "A"
94

Client:      Joy Investment                                         Home:    (818) 335-6879

Property:    332 S. Virgil Ave.
             Los Angeles, CA 90020

Operator Info:
    Operator:     MARC

    Estimator:    Billy

Type of Estimate:     Other
    Date Entered:     7/2/2010              Date Assigned:    7/2/2010
Date Est. Completed:  11/11/2010            Date Job Completed:


Price List:     TRAINING
                Restoration/Service/Remodel
Estimate:       332VIRGIL202

**332VIRGIL202**

**Unit 202 -3 Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Corridor 1 Hr. fire rated door - solid alder - paneled | 1.00 EA @ | 1,061.44 = | 1,061.44 |
| R&R Bypass mirrored door set - High grade | 2.00 EA @ | 357.91 = | 715.82 |
| R&R Interior door unit - Premium grade | 6.00 EA @ | 308.88 = | 1,853.28 |
| R&R Bifold door - full louvered - Single | 1.00 EA @ | 110.48 = | 110.48 |
| R&R Door lockset & deadbolt - exterior - Deluxe grade | 1.00 EA @ | 191.30 = | 191.30 |
| R&R Door knob - interior - High grade | 6.00 EA @ | 47.44 = | 284.64 |
| Finish Hardware Installer - per hour | 8.00 HR @ | 45.18 = | 361.44 |
| Carpenter - Finish, Trim / Cabinet - per hour | 40.00 HR @ | 86.71 = | 3,468.40 |
| Cabinetry - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Closet shelf and rod package | 25.00 LF @ | 69.82 = | 1,745.50 |
| R&R Custom cabinets - vanity units - High grade | 8.00 LF @ | 293.60 = | 2,348.80 |
| R&R Custom cabinets - wall units - 30" tall - High grade | 10.00 LF @ | 221.81 = | 2,218.10 |
| R&R Custom cabinets - wall units - up to 24" tall - High grade | 10.00 LF @ | 207.68 = | 2,076.80 |
| R&R Bypass glass shower door set | 2.00 EA @ | 334.41 = | 668.82 |
| R&R Cooktop w/ oven- gas - Premium grade | 1.00 EA @ | 809.95 = | 809.95 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Dishwasher - Premium grade | 1.00 EA @ | 549.93 = | 549.93 |
| R&R Garbage disposer - High grade | 1.00 EA @ | 176.11 = | 176.11 |
| R&R Microwave oven - over range w/built-in hood | 1.00 EA @ | 344.95 = | 344.95 |
| R&R Refrigerator - side by side - 25 to 30 cf - High grade | 1.00 EA @ | 2,466.66 = | 2,466.66 |
| R&R Washer - Front-loading | 1.00 EA @ | 966.43 = | 966.43 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Window blind - horizontal or vertical - Large | 5.00 EA @ | 117.21 = | 586.05 |
| R&R Sink faucet - Kitchen - High grade | 1.00 EA @ | 184.57 = | 184.57 |
| R&R Sink faucet - Bathroom - High grade | 2.00 EA @ | 143.73 = | 287.46 |
| Plumber - per hour | 40.00 HR @ | 84.15 = | 3,366.00 |
| Plumber - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Sink - single - High grade | 2.00 EA @ | 278.12 = | 556.24 |
| R&R Kitchen Sink - double - High grade | 1.00 EA @ | 330.38 = | 330.38 |
| R&R Toilet - High grade | 2.00 EA @ | 387.30 = | 774.60 |
| R&R Toilet seat - High grade | 2.00 EA @ | 55.83 = | 111.66 |
| R&R Tub/shower faucet - High grade | 2.00 EA @ | 219.20 = | 438.40 |
| R&R Slit system Ac condensor w/ Heat Pump electric - 4500 cfm | 1.00 EA @ | 1,666.71 = | 1,666.71 |
| R&R Thermostat - Premium grade (programmable) | 1.00 EA @ | 217.98 = | 217.98 |
| Painter #1 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter #2 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter # 3 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter Contractor #4 - per hour | 40.00 HR @ | 89.47 = | 3,578.80 |
| Taxes, insurance, renewing permits & fees (Bid item) | 1.00 EA @ | 5,500.00 = | 5,500.00 |

EXHIBIT "A"
96

**CONTINUED - Unit 202 -3 Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Central air conditioning system - 3 ton - 14-15 SEER | 1.00 EA @ | 2,164.63 = | 2,164.63 |
| R&R Heat/AC register | 11.00 EA @ | 17.84 = | 196.24 |

| Adjustments for Base Service Charges | | | | | | Adjustment |
|---|---|---|---|---|---|---|
| Carpenter - Finish, Trim/Cabinet | | | | | | 93.42 |
| | Coverage | Dwelling | @ | 100.00 % = | 93.42 | |
| Electrician | | | | | | 106.78 |
| | Coverage | Dwelling | @ | 100.00 % = | 106.78 | |
| Hardware Installer | | | | | | 90.36 |
| | Coverage | Dwelling | @ | 100.00 % = | 90.36 | |
| Heating / A.C. Mechanic | | | | | | 115.32 |
| | Coverage | Dwelling | @ | 100.00 % = | 115.32 | |
| General Laborer | | | | | | 25.90 |
| | Coverage | Dwelling | @ | 100.00 % = | 25.90 | |
| Plumber | | | | | | 108.30 |
| | Coverage | Dwelling | @ | 100.00 % = | 108.30 | |
| Total Adjustments for Base Service Charges: | | | | | | 540.08 |
| **Line Item Totals: 332VIRGIL202** | | | | | | **53,856.27** |

EXHIBIT "A"
97

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| | | | | | |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 0.00 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

| Coverage | Amount | % | Grand Total | % |
|---|---:|---:|---:|---:|
| Dwelling | 53,316.19 | 100.00% | 55,840.20 | 100.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 53,316.19 | 100.00% | 55,840.20 | 100.00% |

EXHIBIT "A"
98

### Summary for Dwelling

| | | | | |
|---|---|---|---|---:|
| Line Item Total | | | | 53,316.19 |
| Total Adjustments for Base Service Charges | | | | 540.08 |
| Material Sales Tax | @ | 9.250%  x | 21,447.89 | 1,983.93 |
| **Replacement Cost Value** | | | | **$55,840.20** |
| **Net Claim** | | | | **$55,840.20** |

Billy

EXHIBIT "A"
99

## Recap by Room

**Estimate: 332VIRGIL202**

| | | | |
|---|---|---|---|
| **Unit 202 -3 Bedroom** | | **53,316.19** | **99.00%** |
| Coverage: Dwelling | 100.00%  = | 53,316.19 | |
| **Subtotal of Areas** | | **53,316.19** | **99.00%** |
| Coverage: Dwelling | 100.00%  = | 53,316.19 | |
| **Base Service Charges** | | **540.08** | **1.00%** |
| **Total** | | **53,856.27** | **100.00%** |

EXHIBIT "A"
100

## Recap by Category

| O&P Items | | | Total Dollars | % |
|---|---|---|---:|---:|
| **APPLIANCES** | | | **6,920.45** | **12.39%** |
| Coverage: Dwelling | @ | 100.00% = | 6,920.45 | |
| **CABINETRY** | | | **11,026.58** | **19.75%** |
| Coverage: Dwelling | @ | 100.00% = | 11,026.58 | |
| **GENERAL DEMOLITION** | | | **765.68** | **1.37%** |
| Coverage: Dwelling | @ | 100.00% = | 765.68 | |
| **DOORS** | | | **4,290.38** | **7.68%** |
| Coverage: Dwelling | @ | 100.00% = | 4,290.38 | |
| **PERMITS AND FEES** | | | **5,500.00** | **9.85%** |
| Coverage: Dwelling | @ | 100.00% = | 5,500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **1,673.00** | **3.00%** |
| Coverage: Dwelling | @ | 100.00% = | 1,673.00 | |
| **FINISH HARDWARE** | | | **785.26** | **1.41%** |
| Coverage: Dwelling | @ | 100.00% = | 785.26 | |
| **HEAT,  VENT & AIR CONDITIONING** | | | **4,129.01** | **7.39%** |
| Coverage: Dwelling | @ | 100.00% = | 4,129.01 | |
| **LABOR ONLY** | | | **10,715.20** | **19.19%** |
| Coverage: Dwelling | @ | 100.00% = | 10,715.20 | |
| **PLUMBING** | | | **6,953.73** | **12.45%** |
| Coverage: Dwelling | @ | 100.00% = | 6,953.73 | |
| **WINDOW TREATMENT** | | | **556.90** | **1.00%** |
| Coverage: Dwelling | @ | 100.00% = | 556.90 | |
| **Subtotal** | | | **53,316.19** | **95.48%** |
| Base Service Charges | | | 540.08 | 0.97% |
| Material Sales Tax | @ | 9.250% | 1,983.93 | 3.55% |
| **O&P Items Subtotal** | | | **55,840.20** | **100.00%** |

EXHIBIT "A"
101

Client:        Joy Investment                                    Home:    (818) 335-6879

Property:      332 S. Virgil Ave.
               Los Angeles, CA 90020

Operator Info:
    Operator:  MARC

    Estimator: Billy

Type of Estimate:    Other
    Date Entered:    7/2/2010           Date Assigned:    7/2/2010
Date Est. Completed: 11/11/2010         Date Job Completed:


Price List:    TRAINING
               Restoration/Service/Remodel
Estimate:      332VIRGIL103-203

EXHIBIT "A"
102

**332VIRGIL103-203**

**Unit 103 2 story 3BR**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Corridor 1 Hr. fire rated door - solid alder - paneled | 2.00 EA @ | 1,061.44 = | 2,122.88 |
| R&R Bypass mirrored door set - High grade | 2.00 EA @ | 357.91 = | 715.82 |
| R&R Interior door unit - Premium grade | 6.00 EA @ | 308.88 = | 1,853.28 |
| R&R Bifold door - full louvered - Single | 6.00 EA @ | 110.48 = | 662.88 |
| R&R Door lockset & deadbolt - exterior - Deluxe grade | 1.00 EA @ | 191.30 = | 191.30 |
| Finish Hardware Installer - per hour | 81.00 HR @ | 45.18 = | 3,659.58 |
| R&R Door knob - interior - High grade | 6.00 EA @ | 47.44 = | 284.64 |
| Carpenter - Finish, Trim / Cabinet - per hour | 60.00 HR @ | 86.71 = | 5,202.60 |
| Cabinetry - General Laborer - per hour | 60.00 HR @ | 25.90 = | 1,554.00 |
| R&R Closet shelf and rod package | 32.00 LF @ | 69.82 = | 2,234.24 |
| R&R Custom cabinets - vanity units - High grade | 12.00 LF @ | 293.60 = | 3,523.20 |
| R&R Custom cabinets - wall units - 30" tall - High grade | 20.00 LF @ | 221.81 = | 4,436.20 |
| R&R Custom cabinets - wall units - up to 24" tall - High grade | 20.00 LF @ | 207.68 = | 4,153.60 |
| R&R Bypass glass shower door set | 3.00 EA @ | 334.41 = | 1,003.23 |
| R&R Cooktop  w/ oven- gas - Premium grade | 1.00 EA @ | 809.95 = | 809.95 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Dishwasher - Premium grade | 1.00 EA @ | 549.93 = | 549.93 |
| R&R Garbage disposer - High grade | 1.00 EA @ | 176.11 = | 176.11 |
| R&R Microwave oven - over range w/built-in hood | 1.00 EA @ | 344.95 = | 344.95 |
| R&R Refrigerator - side by side - 25 to 30 cf - High grade | 1.00 EA @ | 2,466.66 = | 2,466.66 |
| R&R Washer - Front-loading | 1.00 EA @ | 966.43 = | 966.43 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Window blind - horizontal or vertical - Large | 11.00 EA @ | 117.21 = | 1,289.31 |
| R&R Sink faucet - Kitchen - High grade | 1.00 EA @ | 184.57 = | 184.57 |
| R&R Sink faucet - Bathroom - High grade | 3.00 EA @ | 143.73 = | 431.19 |
| Plumber - per hour | 50.00 HR @ | 84.15 = | 4,207.50 |
| Plumber - General Laborer - per hour | 50.00 HR @ | 25.90 = | 1,295.00 |
| R&R Sink - single - High grade | 3.00 EA @ | 278.12 = | 834.36 |
| R&R Kitchen Sink - double - High grade | 1.00 EA @ | 330.38 = | 330.38 |
| R&R Toilet - High grade | 3.00 EA @ | 387.30 = | 1,161.90 |
| R&R Toilet seat - High grade | 3.00 EA @ | 55.83 = | 167.49 |
| R&R Tub/shower faucet - High grade | 3.00 EA @ | 219.20 = | 657.60 |
| R&R Slit system  Ac condensor w/ Heat Pump electric - 4500 cfm | 1.00 EA @ | 1,666.71 = | 1,666.71 |
| R&R Thermostat - Premium grade (programmable) | 1.00 EA @ | 217.98 = | 217.98 |
| Painter #1 - per hour | 60.00 HR @ | 59.47 = | 3,568.20 |
| Painter #2 - per hour | 60.00 HR @ | 59.47 = | 3,568.20 |
| Painter # 3 - per hour | 60.00 HR @ | 59.47 = | 3,568.20 |
| Painter Contractor #4 - per hour | 60.00 HR @ | 89.47 = | 5,368.20 |
| Taxes, insurance, renewing permits & fees (Bid item) | 1.00 EA @ | 5,500.00 = | 5,500.00 |

332VIRGIL103-203

**CONTINUED - Unit 103 2 story 3BR**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Central air conditioning system - 3 ton - 14-15 SEER | 1.00 EA @ | 2,164.63 = | 2,164.63 |
| R&R Heat/AC register | 11.00 EA @ | 17.84 = | 196.24 |

| Adjustments for Base Service Charges | | | | | | Adjustment |
|---|---|---|---|---|---|---|
| Carpenter - Finish, Trim/Cabinet | | | | | | 93.42 |
| | Coverage | Dwelling | @ | 100.00 % = | 93.42 | |
| Electrician | | | | | | 106.78 |
| | Coverage | Dwelling | @ | 100.00 % = | 106.78 | |
| Hardware Installer | | | | | | 90.36 |
| | Coverage | Dwelling | @ | 100.00 % = | 90.36 | |
| Heating / A.C. Mechanic | | | | | | 115.32 |
| | Coverage | Dwelling | @ | 100.00 % = | 115.32 | |
| General Laborer | | | | | | 25.90 |
| | Coverage | Dwelling | @ | 100.00 % = | 25.90 | |
| Plumber | | | | | | 108.30 |
| | Coverage | Dwelling | @ | 100.00 % = | 108.30 | |
| Total Adjustments for Base Service Charges: | | | | | | 540.08 |
| **Line Item Totals: 332VIRGIL103-203** | | | | | | **75,558.44** |

EXHIBIT "A"
104

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 0.00 | SF Walls | 0.00 | SF Ceiling | 0.00 | SF Walls and Ceiling |
| 0.00 | SF Floor | 0.00 | SY Flooring | 0.00 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 0.00 | LF Ceil. Perimeter |
| | | | | | |
| 0.00 | Floor Area | 0.00 | Total Area | 0.00 | Interior Wall Area |
| 0.00 | Exterior Wall Area | 0.00 | Exterior Perimeter of Walls | | |
| | | | | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

| Coverage | Amount | % | Grand Total | % |
|---|---|---|---|---|
| Dwelling | 75,018.36 | 100.00% | 78,260.48 | 100.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 75,018.36 | 100.00% | 78,260.48 | 100.00% |

## Summary for Dwelling

| | | | |
|---|---|---|---:|
| Line Item Total | | | 75,018.36 |
| Total Adjustments for Base Service Charges | | | 540.08 |
| Material Sales Tax | @     9.250%  x | 29,211.19 | 2,702.04 |

| | |
|---|---:|
| **Replacement Cost Value** | **$78,260.48** |
| **Net Claim** | **$78,260.48** |

Billy

## Recap by Room

**Estimate: 332VIRGIL103-203**

| | | | |
|---|---|---:|---:|
| **Unit 103 2 story 3BR** | | **75,018.36** | **99.29%** |
| Coverage: Dwelling | 100.00% = | 75,018.36 | |
| **Subtotal of Areas** | | **75,018.36** | **99.29%** |
| Coverage: Dwelling | 100.00% = | 75,018.36 | |
| **Base Service Charges** | | **540.08** | **0.71%** |
| **Total** | | **75,558.44** | **100.00%** |

EXHIBIT "A"
107

## Recap by Category

| O&P Items | | | Total Dollars | % |
|---|---|---|---:|---:|
| **APPLIANCES** | | | **6,920.45** | **8.84%** |
| Coverage: Dwelling | @ | 100.00% = | 6,920.45 | |
| **CABINETRY** | | | **18,643.92** | **23.82%** |
| Coverage: Dwelling | @ | 100.00% = | 18,643.92 | |
| **GENERAL DEMOLITION** | | | **1,036.98** | **1.33%** |
| Coverage: Dwelling | @ | 100.00% = | 1,036.98 | |
| **DOORS** | | | **6,181.35** | **7.90%** |
| Coverage: Dwelling | @ | 100.00% = | 6,181.35 | |
| **PERMITS AND FEES** | | | **5,500.00** | **7.03%** |
| Coverage: Dwelling | @ | 100.00% = | 5,500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **2,141.44** | **2.74%** |
| Coverage: Dwelling | @ | 100.00% = | 2,141.44 | |
| **FINISH HARDWARE** | | | **4,083.40** | **5.22%** |
| Coverage: Dwelling | @ | 100.00% = | 4,083.40 | |
| **HEAT,  VENT & AIR CONDITIONING** | | | **4,129.01** | **5.28%** |
| Coverage: Dwelling | @ | 100.00% = | 4,129.01 | |
| **LABOR ONLY** | | | **16,072.80** | **20.54%** |
| Coverage: Dwelling | @ | 100.00% = | 16,072.80 | |
| **PLUMBING** | | | **9,083.83** | **11.61%** |
| Coverage: Dwelling | @ | 100.00% = | 9,083.83 | |
| **WINDOW TREATMENT** | | | **1,225.18** | **1.57%** |
| Coverage: Dwelling | @ | 100.00% = | 1,225.18 | |
| **Subtotal** | | | **75,018.36** | **95.86%** |
| Base Service Charges | | | 540.08 | 0.69% |
| Material Sales Tax | @ | 9.250% | 2,702.04 | 3.45% |
| **O&P Items Subtotal** | | | **78,260.48** | **100.00%** |

EXHIBIT "A"
108

Client:    Joy Investment

Home:    (818) 335-6879

Property:    332 S. Virgil Ave.
Los Angeles, CA 90020

Operator Info:
Operator:    MARC

Estimator:    Billy

Type of Estimate:    Other
Date Entered:    7/2/2010          Date Assigned:    7/2/2010
Date Est. Completed:    11/11/2010          Date Job Completed:

Price List:    TRAINING
Restoration/Service/Remodel
Estimate:    332VIRGIL301

**332VIRGIL301**

**Unit 301 - 2 Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Corridor 1 Hr. fire rated door - solid alder - paneled | 1.00 EA @ | 1,061.44 = | 1,061.44 |
| R&R Bypass mirrored door set - High grade | 2.00 EA @ | 357.91 = | 715.82 |
| R&R Interior door unit - Premium grade | 5.00 EA @ | 308.88 = | 1,544.40 |
| R&R Bifold door - full louvered - Single | 3.00 EA @ | 110.48 = | 331.44 |
| R&R Door lockset & deadbolt - exterior - Deluxe grade | 1.00 EA @ | 191.30 = | 191.30 |
| Finish Hardware Installer - per hour | 8.00 HR @ | 45.18 = | 361.44 |
| R&R Door knob - interior - High grade | 5.00 EA @ | 47.44 = | 237.20 |
| Carpenter - Finish, Trim / Cabinet - per hour | 40.00 HR @ | 86.71 = | 3,468.40 |
| Cabinetry - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Closet shelf and rod package | 26.00 LF @ | 69.82 = | 1,815.32 |
| R&R Custom cabinets - vanity units - High grade | 8.00 LF @ | 293.60 = | 2,348.80 |
| R&R Custom cabinets - wall units - 30" tall - High grade | 10.00 LF @ | 221.81 = | 2,218.10 |
| R&R Custom cabinets - wall units - up to 24" tall - High grade | 10.00 LF @ | 207.68 = | 2,076.80 |
| R&R Bypass glass shower door set | 2.00 EA @ | 334.41 = | 668.82 |
| R&R Cooktop w/ oven- gas - Premium grade | 1.00 EA @ | 809.95 = | 809.95 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Dishwasher - Premium grade | 1.00 EA @ | 549.93 = | 549.93 |
| R&R Garbage disposer - High grade | 1.00 EA @ | 176.11 = | 176.11 |
| R&R Microwave oven - over range w/built-in hood | 1.00 EA @ | 344.95 = | 344.95 |
| R&R Refrigerator - side by side - 25 to 30 cf - High grade | 1.00 EA @ | 2,466.66 = | 2,466.66 |
| R&R Washer - Front-loading | 1.00 EA @ | 966.43 = | 966.43 |
| R&R Dryer - Gas - High grade | 1.00 EA @ | 864.61 = | 864.61 |
| R&R Window blind - horizontal or vertical - Large | 3.00 EA @ | 117.21 = | 351.63 |
| R&R Sink faucet - Kitchen - High grade | 1.00 EA @ | 184.57 = | 184.57 |
| R&R Sink faucet - Bathroom - High grade | 2.00 EA @ | 143.73 = | 287.46 |
| Plumber - per hour | 40.00 HR @ | 84.15 = | 3,366.00 |
| Plumber - General Laborer - per hour | 40.00 HR @ | 25.90 = | 1,036.00 |
| R&R Sink - single - High grade | 2.00 EA @ | 278.12 = | 556.24 |
| R&R Kitchen Sink - double - High grade | 1.00 EA @ | 330.38 = | 330.38 |
| R&R Toilet - High grade | 2.00 EA @ | 387.30 = | 774.60 |
| R&R Toilet seat - High grade | 2.00 EA @ | 55.83 = | 111.66 |
| R&R Tub/shower faucet - High grade | 2.00 EA @ | 219.20 = | 438.40 |
| R&R Slit system  Ac condensor w/ Heat Pump electric - 4500 cfm | 1.00 EA @ | 1,666.71 = | 1,666.71 |
| R&R Thermostat - Premium grade (programmable) | 1.00 EA @ | 217.98 = | 217.98 |
| Painter #1 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter #2 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter # 3 - per hour | 40.00 HR @ | 59.47 = | 2,378.80 |
| Painter Contractor #4 - per hour | 40.00 HR @ | 89.47 = | 3,578.80 |
| Taxes, insurance, renewing permits & fees (Bid item) | 1.00 EA @ | 5,500.00 = | 5,500.00 |

EXHIBIT "A"
110

**CONTINUED - Unit 301 - 2 Bedroom**

| DESCRIPTION | QNTY | UNIT COST | TOTAL |
|---|---|---|---|
| R&R Central air conditioning system - 3 ton - 14-15 SEER | 1.00 EA @ | 2,164.63 = | 2,164.63 |
| R&R Heat/AC register | 11.00 EA @ | 17.84 = | 196.24 |

| Adjustments for Base Service Charges | | | | | | Adjustment |
|---|---|---|---|---|---|---|
| Carpenter - Finish, Trim/Cabinet | | | | | | 93.42 |
| | Coverage | Dwelling | @ | 100.00 % = | 93.42 | |
| Electrician | | | | | | 106.78 |
| | Coverage | Dwelling | @ | 100.00 % = | 106.78 | |
| Hardware Installer | | | | | | 90.36 |
| | Coverage | Dwelling | @ | 100.00 % = | 90.36 | |
| Heating / A.C. Mechanic | | | | | | 115.32 |
| | Coverage | Dwelling | @ | 100.00 % = | 115.32 | |
| General Laborer | | | | | | 25.90 |
| | Coverage | Dwelling | @ | 100.00 % = | 25.90 | |
| Plumber | | | | | | 108.30 |
| | Coverage | Dwelling | @ | 100.00 % = | 108.30 | |
| Total Adjustments for Base Service Charges: | | | | | | 540.08 |
| **Line Item Totals: 332VIRGIL301** | | | | | | **53,556.31** |

**Grand Total Areas:**

| | | |
|---|---|---|
| 0.00  SF Walls | 0.00  SF Ceiling | 0.00  SF Walls and Ceiling |
| 0.00  SF Floor | 0.00  SY Flooring | 0.00  LF Floor Perimeter |
| 0.00  SF Long Wall | 0.00  SF Short Wall | 0.00  LF Ceil. Perimeter |
| | | |
| 0.00  Floor Area | 0.00  Total Area | 0.00  Interior Wall Area |
| 0.00  Exterior Wall Area | 0.00  Exterior Perimeter of Walls | |
| | | |
| 0.00  Surface Area | 0.00  Number of Squares | 0.00  Total Perimeter Length |
| 0.00  Total Ridge Length | 0.00  Total Hip Length | |

| Coverage | Amount | % | Grand Total | % |
|---|---|---|---|---|
| Dwelling | 53,016.23 | 100.00% | 55,510.38 | 100.00% |
| Other Structures | 0.00 | 0.00% | 0.00 | 0.00% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 53,016.23 | 100.00% | 55,510.38 | 100.00% |

332VIRGIL301                                                       11/11/2010        Page: 4

EXHIBIT "A"
112

## Summary for Dwelling

| | | | | |
|---|---|---|---|---|
| Line Item Total | | | | 53,016.23 |
| Total Adjustments for Base Service Charges | | | | 540.08 |
| Material Sales Tax | @ | 9.250%  x | 21,125.05 | 1,954.07 |

| | |
|---|---|
| **Replacement Cost Value** | **$55,510.38** |
| **Net Claim** | **$55,510.38** |

Billy

332VIRGIL301                                          11/11/2010        Page: 5

EXHIBIT "A"
113

## Recap by Room

**Estimate: 332VIRGIL301**

| | | | |
|---|---|---:|---:|
| **Unit 301 - 2 Bedroom** | | **53,016.23** | **98.99%** |
| Coverage: Dwelling | 100.00% = | 53,016.23 | |
| **Subtotal of Areas** | | **53,016.23** | **98.99%** |
| Coverage: Dwelling | 100.00% = | 53,016.23 | |
| **Base Service Charges** | | **540.08** | **1.01%** |
| **Total** | | **53,556.31** | **100.00%** |

EXHIBIT "A"
114

## Recap by Category

| O&P Items | | | Total Dollars | % |
|---|---|---|---:|---:|
| **APPLIANCES** | | | **6,920.45** | **12.47%** |
| Coverage: Dwelling | @ | 100.00% = | 6,920.45 | |
| **CABINETRY** | | | **11,026.58** | **19.86%** |
| Coverage: Dwelling | @ | 100.00% = | 11,026.58 | |
| **GENERAL DEMOLITION** | | | **753.31** | **1.36%** |
| Coverage: Dwelling | @ | 100.00% = | 753.31 | |
| **DOORS** | | | **4,198.83** | **7.56%** |
| Coverage: Dwelling | @ | 100.00% = | 4,198.83 | |
| **PERMITS AND FEES** | | | **5,500.00** | **9.91%** |
| Coverage: Dwelling | @ | 100.00% = | 5,500.00 | |
| **FINISH CARPENTRY / TRIMWORK** | | | **1,739.92** | **3.13%** |
| Coverage: Dwelling | @ | 100.00% = | 1,739.92 | |
| **FINISH HARDWARE** | | | **745.06** | **1.34%** |
| Coverage: Dwelling | @ | 100.00% = | 745.06 | |
| **HEAT, VENT & AIR CONDITIONING** | | | **4,129.01** | **7.44%** |
| Coverage: Dwelling | @ | 100.00% = | 4,129.01 | |
| **LABOR ONLY** | | | **10,715.20** | **19.30%** |
| Coverage: Dwelling | @ | 100.00% = | 10,715.20 | |
| **PLUMBING** | | | **6,953.73** | **12.53%** |
| Coverage: Dwelling | @ | 100.00% = | 6,953.73 | |
| **WINDOW TREATMENT** | | | **334.14** | **0.60%** |
| Coverage: Dwelling | @ | 100.00% = | 334.14 | |
| **Subtotal** | | | **53,016.23** | **95.51%** |
| Base Service Charges | | | 540.08 | 0.97% |
| Material Sales Tax | @ | 9.250% | 1,954.07 | 3.52% |
| **O&P Items Subtotal** | | | **55,510.38** | **100.00%** |

EXHIBIT "A"
115